STATE OF CONNECTICUT *v.* TIMOTHY SHASHATY
(SC 16088)

Borden, Norcott, Katz, Sullivan and Peters, Js.

 

Argued September 28—officially released December 28, 1999

*Lisa J. Steele*, special public defender, for the appellant (defendant).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *Mark S. Solak*, state's attorney, and *Debra Collins*, assistant state's attorney, for the appellee (state).

*Opinion*

SULLIVAN, J. The defendant, Timothy Shashaty, was charged by a substitute information with escape in the first degree in violation of General Statutes § 53a-169 (a) (1),[1] and interfering with an officer in violation of General Statutes § 53a-167a (a).[2] The state alleged that the defendant had escaped from a correctional institution and interfered with a police officer who had helped return him to custody. Before trial, the court granted the defendant's request to represent himself. Thereafter, the trial court granted the defendant's motion for standby counsel. On the day before voir dire was to

---

[1] General Statutes § 53a-169 (a) provides in relevant part: "A person is guilty of escape in the first degree (1) if he escapes from a correctional institution . . . ."

[2] General Statutes § 53a-167a (a) provides: "A person is guilty of interfering with an officer when he obstructs, resists, hinders or endangers any peace officer or fireman in the performance of his duties."

begin, the court informed the defendant that he would remain shackled during jury selection and trial. After a jury trial that began on November 19, 1997, and ended on December 22, 1997, the jury returned a verdict of not guilty of escape in the first degree and guilty of interfering with an officer. The court rendered judgment in accordance with the jury's verdict. The defendant appealed from the judgment of conviction to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

The jury reasonably could have found the following facts. On October 12, 1996, the defendant was incarcerated at the Brooklyn Correctional Institution. At approximately 7:30 p.m. on that date, the defendant fled from the prison by scaling two fences topped with razor wire. Connecticut State Trooper Eric Dency was dispatched to the prison in response. On his way to the prison, Dency saw the defendant walking on the eastbound side of Route 6 with a blood soaked sweatshirt wrapped around one of his hands. Dency pulled over to the side of the road, exited his cruiser, told the defendant that he was under arrest and ordered him to the ground. The defendant resisted being handcuffed and, while Dency was attempting to pat him down, the defendant pushed Dency away and began to run. Dency eventually caught the defendant and, with the help of two correction officers who subsequently had arrived at the scene, handcuffed the defendant. The defendant was then transported to a hospital for treatment and later was returned to the custody of the department of correction.

Although the defendant admitted at trial that he escaped from prison on October 12, 1996, and that he fled from a state trooper who confronted him during his escape, he raised the defenses of necessity and entrapment, upon which the jury was instructed. These

defenses were based upon the defendant's claims that he had been the victim of threats, retaliation and an assault by another inmate that had been instigated by various state officials associated with the judicial district of Ansonia-Milford. The defendant testified that certain state officials had been so embarrassed by the defendant's prior successful pro se defense, in 1994, against a charge of sexual assault in the first degree, that they had initiated a campaign of retaliation and harassment directed at the defendant and his girlfriend.

The defendant claimed that such retaliation included: setting up him and his girlfriend for arrest on the charge for which he had been convicted and incarcerated when he fled from prison; having him assaulted by another inmate or inmates while he was incarcerated; ordering the destruction or alteration of documents that were favorable to his defense; interfering with his access to the Superior Court; and sending letters to him in prison, threatening him with physical harm and action against his girlfriend should he continue to seek legal redress for the wrongs that he attributed to various state employees. Additional facts will be provided as necessary.

On appeal, the defendant claims that his state and federal constitutional rights to a fair trial and self-representation[3] were violated, requiring a reversal and dismissal of his conviction, or alternatively, a reversal of his conviction and a new trial. The defendant argues that his rights were violated because: (1) the trial court

---

[3] The sixth amendment to the United States constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." The United States Supreme Court has held that "the right to self-representation . . . is thus necessarily implied by the structure of the [sixth amendment]." *Faretta* v. *California*, 422 U.S. 806, 819, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975).

Article first, § 8, of the constitution of Connecticut also guarantees the right to self-representation by providing: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel . . . ."

improperly restricted his ability to contact potential witnesses and an investigator while he was conducting his pro se defense; (2) the trial court improperly forced him to rely upon standby counsel to obtain legal research materials; (3) officials of the department of correction read and destroyed his legal materials; (4) the trial court effectively invalidated his waiver of counsel by denying him access to legal materials and confidential communication with witnesses and an investigator; and (5) the trial court abused its discretion in requiring him to remain in leg shackles during trial. We disagree with the defendant's claims and affirm the judgment of the trial court.

I

## CONTACT OF POTENTIAL WITNESSES AND AN INVESTIGATOR

The defendant asserts that his state and federal constitutional rights to self-representation and a fair trial[4] were violated by the manner in which the trial court restricted his ability to contact potential witnesses and an investigator in preparation of his defense. The following additional facts are necessary to resolve this issue.

On December 18, 1996, approximately one month after the trial court granted the defendant the right to proceed pro se, the defendant moved for an order granting him the right to make legal telephone calls to

[4] Although the defendant argues that the manner in which the trial court restricted his telephonic access to an investigator violated his right to a fair trial, as distinct from his right to self-representation, the defendant has failed to brief this claim. The defendant provides no legal analysis for his argument and cites no authorities to support it. "Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *State* v. *Dumas*, 54 Conn. App. 780, 794, 739 A.2d 1251 (1999); see also *Connecticut National Bank* v. *Giacomi*, 242 Conn. 17, 44–45, 699 A.2d 101 (1997). Therefore, we decline to review this portion of the defendant's claim.

"contact private investigators, witnesses, and [obtain] material need[ed] in preparation of [his] defense." The court denied the motion. A similar motion was denied on May 6, 1997. On September 17, 1997, the defendant made a motion for standby counsel, which was granted the following day. On September 18, 1997, the trial court ordered in the defendant's mittimus that he be allowed to call standby counsel or an investigator. The next day, during the first day of jury selection, the trial court again ordered in the mittimus that the defendant be allowed to call standby counsel and an investigator, but refused to order that he be allowed to contact witnesses directly.

On October 16, 1997, still during voir dire,[5] the trial court ordered in the mittimus that the defendant be provided with "[two telephone] calls of [a] legal nature per day . . . ." On December 5, 1997, the department of correction (department) moved to vacate or modify, inter alia, the foregoing order. On December 11, 1997, at a hearing to consider that motion, Glenn Marrus, a correctional counselor at the prison at which the defendant was incarcerated at the time of trial, testified in support of the motion. Marrus testified that, under department directives, each inmate is allowed two legal telephone calls per month, not including incoming telephone calls from an inmate's attorney. Marrus testified that, since October 20, 1997, prison personnel had placed eighty-four telephone calls for the defendant. Marrus further testified that complying with the court's order had caused him to neglect other duties, and that other inmates had begun to complain about the preferential treatment afforded the defendant.

In further support of its motion, the department offered to transfer the defendant to a correctional facility located near standby counsel and to allow the defendant nearly unlimited personal contact visits with

[5] The defendant's jury selection, trial and sentencing took place over a four month period, from September, 1997, to January, 1998.

standby counsel. In response to this offer, the defendant expressed concern over his ability to contact his private investigator directly if the court were to vacate its existing order. The defendant argued that requiring him to work through standby counsel in order to contact his private investigator, who was contacting witnesses on the defendant's behalf, would violate his federal constitutional right to represent himself. The court rejected the defendant's argument.

Counsel for the department responded to this discussion by stating that he did not realize that the defendant had been using his "legal [telephone] calls," granted pursuant to the trial court's order of October 16, 1997, to contact a private investigator. Department counsel further noted that he did not believe that such telephone calls were privileged. At no point, however, did the department state that it actually had recorded any such telephone calls.[6]

The court agreed with the department that telephone calls to a private investigator from an inmate are not privileged and granted the department's motion to vacate the order on the conditions that the department transfer the defendant to a facility located near standby counsel and that the defendant be allowed virtually unlimited private access to standby counsel. The court denied the defendant's request to order department officials to ensure that the defendant be allowed direct contact with the private investigator if the investigator were to come and see the defendant in prison. The court found that it would be improper for it to "micromanage" the department, and that whether such contact would be allowed would be a matter to be resolved by the defendant and the department.

---

[6] The defendant concedes in his brief that the department did not record the calls that he had made to his investigator prior to the December 11, 1997 hearing.

The defendant argues that the trial court violated his right to self-representation by restricting his ability to contact potential witnesses and an investigator. We distill three distinct arguments from the defendant's brief in support of this claim. The defendant maintains that the court impaired his right to protect his trial strategy from disclosure to the state, interfered with his telephonic access to his investigator and improperly required him to rely on standby counsel for investigatory purposes.

A

The defendant broadly asserts that all incarcerated, pro se defendants have a state and federal constitutional right to contact witnesses and investigators in a manner that protects their trial strategy from disclosure to the state. The defendant did not clearly articulate this claim at trial, but seeks to prevail under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

Without deciding the hypothetical question as to whether all incarcerated, pro se defendants have such a right, we conclude that the defendant in this case has failed to demonstrate how the manner in which the trial court restricted his ability to contact witnesses and an investigator resulted in the disclosure of his trial strategy to the state. Under *Golding*, "the alleged constitutional violation [must] clearly [exist] and [must have] clearly deprived the defendant of a fair trial . . . ." Id., 240.[7] Thus, because the defendant has failed even to

---

[7] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

assert that his trial strategy was disclosed to the state, the constitutional violation does not clearly exist, and the defendant cannot prevail on this component of his claim. See id., 239–40.[8]

B

The defendant also argues that the trial court violated his state and federal constitutional right[9] to represent himself by vacating the order in the mittimus granting him the right to make unrecorded telephone calls to his investigator during his trial. We reject this argument.

We briefly summarize three relevant facts with respect to this claim. First, there was testimony, at a hearing to consider the department's motion to vacate or modify, inter alia, the trial court's prior order authorizing the defendant to call standby counsel and an investigator, that prison personnel had placed eighty-four

[8] The defendant acknowledges the hypothetical nature of his argument in his reply brief. In discussing the *potential* monitoring of his telephone calls by prison personnel, the defendant notes that, "[w]hile testimony and findings would be useful," the issue "is not whether the [d]epartment *actually* interfered with his trial strategy, but the *potential for abuse* under the existing regulations." (Emphasis added.) *Golding*, however, requires that the constitutional violation clearly exist. *State* v. *Golding*, supra, 213 Conn. 240. Therefore, the defendant cannot prevail under *Golding* on claims that merely involve the potential for abuse. See id.

[9] The defendant clearly articulated his federal constitutional claim before the trial court. He did not clearly articulate a state constitutional claim, however. Therefore, he now seeks to prevail under *Golding*. In order to prevail on a state constitutional challenge under *Golding*, "the alleged constitutional violation [must] clearly [exist] and [must have] clearly deprived the defendant of a fair trial . . . ." *State* v. *Golding*, supra, 213 Conn. 240. As the defendant acknowledges in his brief, we have "interpreted the federal and state constitution[s] as providing essentially equivalent protections" with respect to a defendant's right to self-representation. Cf. *State* v. *Day*, 233 Conn. 813, 820–21, 661 A.2d 539 (1995); *State* v. *Townsend*, 211 Conn. 215, 218 n.1, 558 A.2d 669 (1989). For reasons we discuss hereinafter, we conclude that the defendant's federal constitutional right to self-representation was not violated. Therefore, no state constitutional violation clearly exists, and the defendant's claim under the state constitution also must fail. See *State* v. *Golding*, supra, 240.

telephone calls for the defendant over an approximately two month period, during which the defendant was able to have privileged contact with his investigator. Second, although the defendant argues that "[t]he trial court effectively held" that the defendant was required to rely on standby counsel to coordinate the investigation of the defendant's case, there is nothing in the record to suggest that the defendant's private investigator was prevented from personally visiting the defendant in prison. Third, although the defendant raises in his brief a number of *potential* problems that might arise from requiring an incarcerated, pro se defendant to rely on standby counsel to contact an investigator, the record *in this case* does not reveal that the defendant's right to self-representation was hindered as a result of the trial court's ruling.

There is no legal support for the proposition that a defendant's right to self-representation is violated under such circumstances. Rather, the record must show that the defendant has been deprived of the "organization and content of his own defense . . . ." *McKaskle* v. *Wiggins*, 465 U.S. 168, 174, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984). The record does not indicate how the trial court's decision to grant the department's motion to vacate the order granting the defendant privileged telephonic access to his investigator impaired the defendant's control over his defense. Therefore, we conclude that the trial court's decision to vacate its prior order did not violate the defendant's right to self-representation.

## C

Finally, the defendant argues that "[t]he trial court violated [his] right to represent himself by forcing him to rely on [standby counsel], mid-trial, to contact wit-

nesses and coordinate [the] investigation of his case."[10] We reject this argument as well.

We briefly summarize the facts relevant to this claim. In contrast to telephonic access to an investigator, the record does not reveal that the defendant ever was granted privileged telephonic access to potential witnesses. Nor does the record indicate that the defendant ever asked the trial court for privileged telephonic contact with any named witnesses. Finally, the court's decision to vacate its prior order granting the defendant privileged telephonic contact with an investigator did not necessarily cause him to "rely on [standby counsel], mid-trial, to contact witnesses . . . ." As stated previously in this opinion, there is nothing in the record to suggest that the defendant's private investigator, who allegedly was contacting witnesses, was prevented from personally visiting the defendant in prison.

The defendant conceded at oral argument before this court that he does not have a constitutional right, while incarcerated, to make unlimited telephone calls to anyone he claims to be a potential witness. Instead, the defendant argued that his right to self-representation requires that a trial court, sua sponte, instruct the defendant to develop a list of potential witnesses to be telephoned so that the court can rule on the appropriateness of each request. We find no support for such a proposition.

The defendant's constitutional right to self-representation requires that he have "actual control over the case he chooses to present to the jury." (Internal quotation marks omitted.) *State* v. *Day*, 233 Conn. 813, 855, 661

[10] The defendant clearly articulated this federal constitutional claim before the trial court. To the extent that the defendant intends to raise a state constitutional claim by writing in his brief that his "right to represent himself" was violated, this claim fails for reasons identical to those provided in footnote 9 of this opinion.

A.2d 539 (1995), quoting *McKaskle* v. *Wiggins*, supra, 465 U.S. 178. We fail to see how a constitutional requirement that a trial court instruct the defendant to develop a list of potential witnesses to be telephoned is consistent with preserving the defendant's " 'actual control' " over the case. *State* v. *Day*, supra, 855. Rather, "although [a defendant] may conduct his own defense ultimately to his own detriment, his choice must be honored out of that respect for the individual which is the lifeblood of the law." (Internal quotation marks omitted.) Id., 821. Therefore, the defendant's right to self-representation was not violated by the trial court's refusal to grant him privileged telephonic access to potential witnesses.

## II

### OBTAINING LEGAL RESEARCH MATERIALS

The defendant next claims that the trial court violated his state constitutional right to represent himself by forcing him to rely on standby counsel to obtain legal research materials. The following additional facts are necessary to resolve this claim.

On July 16, 1997, the trial court ordered that the defendant's "mittimus should indicate that he is to be provided reasonable access to law materials and law library." On July 24, 1997, the trial judge noted that he "had previously ordered that [the defendant] be provided reasonable access to a law library. I'm clarifying that to say that he's to be provided reasonable access to the law research center, which is the facility available to him." On December 11, 1997, at a hearing to contest, inter alia, that "the defendant be given access to the resource area . . . on a more frequent basis than any other inmate," Marrus testified that the defendant made use of the law research center twelve times. The trial court noted at the December 11, 1997 hearing that, on "the type of issues in the trial itself . . . there's been plenty of time to prepare." The court then stated: "I'm

going to rescind all of the orders and . . . accept the [department's] offer that [standby counsel] be given unlimited access [to you] and that you do research that way."

The transcript does not reveal that the defendant objected to the trial court's requirement that, from that point in the trial forward, he conduct his legal research through standby counsel. Thus, as the defendant did not clearly articulate this claim at trial, he seeks to prevail under *State* v. *Golding*, supra, 213 Conn. 239–40. For reasons we discuss hereinafter, however, we hold that the trial court's use of standby counsel to ensure that the defendant had access to legal materials did not violate the defendant's right to self-representation under the state constitution.

It is clear that the defendant's federal constitutional right to self-representation was not violated by the trial court's use of standby counsel to provide the defendant with access to legal materials. In *Spates* v. *Manson*, 644 F.2d 80 (2d Cir. 1981), the court concluded: "[T]he right to represent oneself in criminal proceedings is protected by the Sixth Amendment . . . . But this right does not carry with it a right to state-financed library resources where state-financed legal assistance is available." (Citation omitted.) Id., 85. The court suggested that standby attorneys could be used to provide pro se defendants with legal assistance and that this assistance is adequate under the federal constitution. See id., 84–85.

As we stated previously in this opinion, we generally have interpreted the state and federal constitutions as providing essentially equivalent protections with respect to a defendant's right to self-representation. See footnote 9 of this opinion. For example, in *State* v. *Day*, supra, 233 Conn. 813, a case in which the defendant's right to self-representation under both the state and

federal constitutions was at issue; see id., 823; we considered the role of standby counsel "within the general constitutional landscape"; id., 853; and did not perform a separate analysis of the defendant's right to self-representation under the state constitution as distinct from his federal constitutional right. See generally id., 820–30. Likewise, in this case, we consider the defendant's right to self-representation under both the state and federal constitutions to be equivalent.

Furthermore, *Spates* is consistent with our conclusion in *Day* that an active role for standby counsel does not necessarily violate a pro se defendant's right to self-representation. Id., 854. In *Day*, we noted that "[n]o absolute bar on standby counsel's unsolicited participation is appropriate . . . . [T]he primary focus must be on whether the defendant [has] a fair chance to present his case in his own way." (Internal quotation marks omitted.) Id., 854–55, quoting *McKaskle* v. *Wiggins*, supra, 465 U.S. 176–77.

In this case, the trial court's decision to require the defendant to rely on standby counsel for access to legal materials during part of the trial did not deprive the defendant of his " 'fair chance to present his case in his own way.' " *State* v. *Day*, supra, 233 Conn. 855. Therefore, no constitutional violation clearly exists; *State* v. *Golding*, supra, 213 Conn. 240; and the defendant cannot prevail on his second claim.

## III

### REVIEW AND DESTRUCTION OF THE DEFENDANT'S LEGAL MATERIALS

The defendant next claims that "the review and destruction of his legal materials, mid-trial, by the [d]epartment violated his state and federal constitutional rights to a fair trial." Specifically, the defendant claims that three pieces of evidence, "which at one

point in the case seemed to have existed," vanished while in the custody of the state or the department: (1) an envelope allegedly containing evidence of threats from state officials that the defendant claims had disappeared when he was transferred, midtrial, between correctional facilities; (2) a letter from the office of the state's attorney in the judicial district of Ansonia-Milford to the office of the state's attorney in the judicial district of Windham requesting copies of documents in the defendant's file; and (3) several envelopes that the defendant allegedly had with him when he was arrested after fleeing from prison. The state contested the existence of any of these alleged pieces of evidence.

As evidenced by the following examples, the trial court was not persuaded that such evidence had ever existed. In addressing the defendant concerning the alleged missing envelope containing threatening letters, the court stated: "Well, I understood what you said but there's been no evidence other than your own statement." In addressing the defendant concerning the alleged correspondence between the two state's attorney's offices, the court stated: "I know what you claim. I am telling [the prosecuting state's attorney that] if there is any fax from Windham to Milford or from Milford to Windham concerning you to produce it. . . . If they say there is none, there's nothing more I can do." Finally, in response to the defendant's allegations of missing envelopes that were seized from him at the time of his arrest, the court stated: "I do not think there is a threshold showing of destruction of evidence."

In the absence of any basis for finding that any state official reviewed or destroyed the defendant's evidence, the defendant's claim relating to missing evidence is unreviewable. The defendant's reliance on his own testimony that such review and destruction did occur and the limited evidence he presented to prove these facts are insufficient to sustain his constitutional challenge.

"Ordinarily it is not the function of this court or the Appellate Court to make factual findings, but rather to decide whether the decision of the trial court was clearly erroneous in light of the evidence and pleadings in the whole record. . . . Conclusions of fact may be drawn on appeal only where the subordinate facts found [by the trial court] make such a conclusion inevitable as a matter of law . . . or where the undisputed facts or uncontroverted evidence and testimony in the record make the factual conclusion so obvious as to be inherent in the trial court's decision." (Citations omitted; internal quotation marks omitted.) *State* v. *Reagan*, 209 Conn. 1, 8–9, 546 A.2d 839 (1988). We cannot say, from a review of the record, that the subordinate facts presented by the defendant *require* the conclusion that, as a matter of law, such review and destruction of his legal documents occurred. Therefore, the defendant's claim fails because there is no factual basis for it. See *State* v. *Satchwell*, 244 Conn. 547, 562, 710 A.2d 1348 (1998) (claims that lack findings of fact in record are unreviewable).

## IV

## CONDITIONAL WAIVER OF COUNSEL

The defendant next claims that his waiver of counsel was conditioned on his right to have unrecorded telephonic access to an investigator and witnesses and access to legal materials necessary to prepare his defense. This claim is unreviewable because there is no evidence in the record that the defendant's waiver was conditioned on any of the aforementioned items. See id. Thus, we decline to consider the hypothetical question posed by the defendant concerning whether a defendant's waiver of counsel properly may be conditioned on access to witnesses, an investigator or legal materials.

V

## SHACKLING ORDER

The defendant's final claim is that the trial court abused its discretion by requiring him to remain in leg shackles during trial in violation of his state and federal constitutional rights to self-representation and a fair trial. The following additional facts are necessary to resolve this issue.

On September 18, 1997, the day before voir dire began, the trial court warned the defendant that he would remain in leg shackles during jury selection and trial, but that the courtroom would be rearranged to prevent the jury from seeing them. The defendant took exception to wearing the shackles during trial. At the time the trial court made the shackling order, there was evidence in the record that the defendant was on trial for escape from a correctional institution. In addition, when the defendant allegedly escaped from prison, he had been incarcerated for failure to appear in court on a previous charge.

Voir dire began on September 19, 1997. After the defendant asked the first venireperson whether the presence of shackles on the defendant would affect the venireperson's impartiality, the court again informed the defendant that it was willing to make every effort to ensure that the jury could not see the defendant's shackles. The court also noted that the defendant had a right to voir dire each potential juror on the effect of leg shackles. The court noted, however, that, if the defendant, himself, was going to inform the jury of the shackles, the court was not going to try and hide from the jury the fact that the defendant was shackled. Upon the resumption of voir dire, the defendant continued to ask each venireperson if the presence of shackles would affect his or her impartiality. It appears that the

defendant remained shackled throughout the proceedings.

The defendant filed a posttrial motion on November 2, 1998, asking the trial court to articulate the basis for its shackling order. On November 12, 1998, the state filed a response to the defendant's motion for articulation, in which the state claimed that it had proffered a report, during an off-the-record chambers conference, detailing an incident in which the defendant, while incarcerated on a previous charge, "physically restrained a nurse and repeatedly threatened her with a pair of scissors." The state claimed that the defendant's standby counsel was present at that conference, but there is no suggestion in the record that the defendant attended the conference. In its articulation, which was filed November 16, 1998, the court noted that it believed leg restraints were necessary because the defendant was on trial for escape after having been convicted of failure to appear, and that both the sheriffs and correction officials regarded the defendant as "high risk." Subsequently, on November 23, 1998, the defendant filed a motion for rectification to confirm whether a chambers conference on the shackling issue had occurred. The trial court responded on December 2, 1998, with an order that provided: "While such a conference probably took place, the court . . . did not base its decision on shackling . . . on such a conference."

The defendant argues that the trial court violated his state and federal constitutional rights to self-representation and a fair trial by requiring him to remain in leg shackles during the trial. The state argues, inter alia, that this claim is unreviewable because, by informing the jury that he was wearing shackles, the defendant himself caused the harm of which he now complains. We do not agree that the defendant waived this claim.

"We have long held that a party cannot ordinarily claim error in the action of the trial court which he [or

she] has induced." (Internal quotation marks omitted.) *State* v. *Sirimanochanh*, 224 Conn. 656, 663, 620 A.2d 761 (1993). The defendant in this case, however, did not induce the trial court, through his own actions taken before the court, to order him to wear the shackles. Thus, the defendant's decision to alert jurors to the fact that he was wearing shackles cannot serve to waive his claim that the shackling order violated his constitutional rights. Thus, the cases cited by the state in its brief, such as *State* v. *Kenney*, 53 Conn. App. 305, 327, 730 A.2d 119, cert. denied, 249 Conn. 930, 733 A.2d 851 (1999), and *State* v. *Edge*, 47 Conn. App. 743, 748–49, 707 A.2d 1271, cert. denied, 244 Conn. 919, 714 A.2d 7 (1998), are inapposite because the defendant in each of those cases instigated the legal action that was the source of the harm of which he subsequently complained. See, e.g., id., 748 (where defendant made and argued for motion for judgment of acquittal in front of jury, court's denial of that motion in jury's presence did not constitute ground for constitutional challenge). In contrast, the trial court's decision in this case to order that the defendant remain shackled was not instigated by any legal action taken by the defendant; rather, the court's decision preceded it. Therefore, because the defendant's decision concerning how best to respond to the court's shackling order cannot serve as the basis for a waiver of his claim, his claim is reviewable.

Both parties recognize that "[t]he standard under which we review [the] claim made by the defendant is whether the trial court abused its sound discretion in refusing to order the restraints removed . . . ." *State* v. *Williams*, 195 Conn. 1, 8, 485 A.2d 570 (1985). "The trial court's discretion on the issue of shackling is broad." (Internal quotation marks omitted.) *State* v. *Woolcock*, 201 Conn. 605, 615, 518 A.2d 1377 (1986). Practice Book § 42-46 (a) provides in relevant part that "[r]easonable means of restraint may be employed if

the judicial authority finds such restraint reasonably necessary to maintain order. . . ."[11] Moreover, "[a] trial judge has a duty to do what may be necessary to prevent escape . . . ." (Internal quotation marks omitted.) *State* v. *Woolcock*, supra, 614. Therefore, we hold that the trial court did not abuse its discretion in ordering the defendant, who was on trial for escaping from prison and who had been incarcerated on a failure to appear charge, to remain shackled during his trial. Thus, the defendant's right to a fair trial was not violated by the trial court's shackling order.

Furthermore, although the defendant argues that the trial court's shackling order violated his right to self-representation, in addition to his right to a fair trial, the defendant's decision to proceed pro se does not vitiate the trial court's ability to "employ a reasonable means of restraint upon a defendant if, exercising its broad discretion in such matters, the court finds that restraints are reasonably necessary under the circumstances." (Internal quotation marks omitted.) *State* v. *Tweedy*, 219 Conn. 489, 505, 594 A.2d 906 (1991). In addition, there has been no showing that the shackles

---

[11] Practice Book § 42-46 provides: "(a) Reasonable means of restraint may be employed if the judicial authority finds such restraint reasonably necessary to maintain order. If restraints appear potentially necessary and the circumstances permit, the judicial authority may conduct an evidentiary hearing outside the presence of the jury before ordering such restraints. The judicial authority may rely on information other than that formally admitted into evidence. Such information shall be placed on the record outside the presence of the jury and the defendant given an opportunity to respond to it.

"(b) In ordering the use of restraints or denying a request to remove them, the judicial authority shall detail its reasons on the record outside the presence of the jury. The nature and duration of the restraints employed shall be those reasonably necessary under the circumstances. All reasonable efforts shall be employed to conceal such restraints from the view of the jurors. Upon request, the judicial authority shall instruct the jurors that restraint is not to be considered in assessing the evidence or in the determination of the case."

denied the defendant "actual control over the case he [chose] to present to the jury." (Internal quotation marks omitted.) *State* v. *Day*, supra, 233 Conn. 855. Therefore, the shackling order did not violate the defendant's right to self-representation.

The defendant also contends that his constitutional rights to represent himself and to a fair trial were violated because the trial court failed, in violation of what is now Practice Book § 42-46, to place its reasons for the shackling order on the record when the order was made.[12] Although the trial court placed its reasons on the record in a posttrial articulation, the defendant argues that this attempt by the trial court to cure its error was insufficient to eliminate the prejudice that he had suffered. The defendant argues, and we agree, that one of the reasons for requiring the trial court to place its reasons on the record is to allow the defendant the opportunity to respond to the trial court's reasons for the shackling order.[13] See *State* v. *Tweedy*, supra, 219 Conn. 507; *State* v. *Woolcock*, supra, 201 Conn. 616.

The defendant further argues that, although the trial court stated in its posttrial articulation that it relied upon information from the sheriffs and correction officials that the defendant was "high risk," these officials never made a statement on the record as to the reasons for their assessment. Therefore, the defendant argues, he was never given a chance to respond to this information. Indeed, from our review of the record, it does not appear that the defendant was given an opportunity to

---

[12] Practice Book § 42-46 (b) provides in relevant part: "In ordering the use of restraints or denying a request to remove them, the judicial authority shall detail its reasons on the record outside the presence of the jury. . . ."

[13] A second reason for placing the trial court's reasons on the record is to ensure that appellate review is possible. See *State* v. *Tweedy*, supra, 219 Conn. 506. In this case, the trial court's posttrial articulation provides an adequate record for appellate review of the trial court's reasons for the shackling order.

respond to any information offered by the sheriffs or correction officials before the trial court ordered him to remain shackled during trial. Although the trial court may "consider other information not in evidence, including official records, information supplied by [correction] officers and attorneys, and facts generally known within the limits of its jurisdiction . . . [s]uch information or knowledge . . . should be placed on the record outside the presence of the jury and the defendant given the opportunity to respond to that information." (Citations omitted; internal quotation marks omitted.) *State* v. *Tweedy*, supra, 219 Conn. 507.

Irrespective of the trial court's failure to allow the defendant to respond to the sheriffs' and correction officials' determination that the defendant was "high risk," however, the trial court placed ample reasons on the record to justify the shackling. In light of the fact that the defendant was being incarcerated on a failure to appear charge and was being tried for escape in the first degree, it would not have been an abuse of discretion for the trial court to order the defendant shackled, even in the absence of any information supplied by the sheriffs or correction officials. Therefore, the trial court's failure to allow the defendant to respond to the sheriffs' and correction officials' information, even though improper, was harmless, and did not violate the defendant's rights to self-representation or a fair trial.

Finally, the defendant argues that "[i]f the [shackling] order was affected by a chambers conference at which [the defendant] was not present, it is tainted by a per se violation" of his right to self-representation. The trial court, however, expressly stated in its order of December 2, 1998, that it "did not base its decision on shackling . . . on such a conference." Therefore, we need not consider whether it would be a violation of the defen-

dant's constitutional right to self-representation had the shackling order been affected by such a conference.

The judgment is affirmed.

In this opinion the other justices concurred.