******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* LISHAN WANG
(SC 19178)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald and Espinosa, Js.

*Argued October 31, 2013—officially released June 17, 2014*

*S. Max Simmons*, assigned counsel, for the appellant (defendant).

*Timothy J. Sugrue*, assistant state's attorney, with whom were *Eugene R. Calistro, Jr.*, senior assistant state's attorney, and, on the brief, *Michael Dearington*, state's attorney, and *Matthew A. Weiner*, deputy assistant state's attorney, for the appellee (state).

*Adam P. Mauriello*, counsel, legal services, with whom was *Martin R. Libbin*, director of legal services, for the Office of the Chief Court Administrator as amicus curiae.

*Martin Zeldis*, public defender, with whom were *Deborah Del Prete Sullivan*, director of legal counsel, and, on the brief, *Neal Cone*, senior assistant public defender, for the Public Defender Services Commission as amicus curiae.

*Opinion*

ROGERS, C. J. The primary issue to be resolved in this reservation is whether an indigent defendant who has waived the right to counsel and represents himself in a criminal prosecution is constitutionally entitled to expert or investigative services at public expense that are reasonably necessary to formulate and present a defense. The defendant, Lishan Wang, is charged with, inter alia, murder in violation of General Statutes § 53a-54a (a). While preparing for trial, the state and the defendant entered into a joint stipulation requesting the trial court to reserve four questions of law to this court pursuant to General Statutes § 52-235[1] and Practice Book § 73-1.[2] The trial court, *Clifford, J.*, granted the joint request of the parties to reserve the following four questions for the advice of this court:

"1. Is an indigent defendant who qualifies for public defender assistance, but who has waived the right to counsel and represents himself with the assistance of standby counsel, constitutionally entitled to public defender or other public funds to secure the assistance of an investigator and/or experts whose services are reasonably necessary to formulate and present a defense?

"2. If the answer to question one (1) above is in the affirmative, does the trial court retain the discretion to grant or deny authorization for public expenditure for any such expert witness [or investigator] fee[s] based upon the trial court's threshold determination [that such services are reasonably necessary to formulate and present a defense]?[3]

"3. If the answer to question one (1) above is in the affirmative, should public funds come from the [s]tate of Connecticut's Office of the [Chief] Public Defender?

"4. If the answer to question three (3) above is in the negative, should public funds come from the Connecticut Judicial Branch?"[4] (Footnotes added.)

We answer the first reserved question in the affirmative, the second reserved question in the negative, and the third reserved question in the affirmative. Because we answer the third reserved question in the affirmative, we do not answer the fourth reserved question.

The stipulation of the parties accompanying the reserved questions recites the following factual and procedural history.[5] "The defendant is charged with, among other charges, murder in violation of . . . § 53a-54a (a) stemming from an alleged incident that occurred on or about April 26, 2010. . . . The defendant is currently incarcerated and awaiting trial in the New Haven judicial district. He is being held on a cash only bond of $900,000. . . .

"On or about April 27, 2010, the defendant was found to be indigent and was appointed public defender repre-

sentation in New Haven . . . . On May 11, 2011, the defendant filed a motion seeking to represent himself in the criminal proceedings. . . . On December 14, 2011, the court, *Fasano, J.*, granted the defendant's motion for self-representation. At this hearing, after a formal canvas by the court, the defendant waived his right to appointed counsel and has since represented himself pro se with the assistance of 'standby' counsel from the Office of the [Chief] Public Defender. . . .

"The defendant has requested that the trial court, *Clifford, J.*, order funding so that he may retain various experts and an investigator.[6] . . . The defendant claims that he is constitutionally entitled to funding for ret[ention] of experts as well as an investigator in order to formulate and present a defense to pending charges. . . . The [p]arties further [stipulate] that the Office of the [Chief] Public Defender for the [s]tate of Connecticut has been asked to, and declined to provide funding in order for the defendant to retain the requested experts and investigator. . . . The defendant has agreed to the appointment of counsel, Special Public Defender [S.] Max Simmons, for the limited purpose of litigating this reservation, but continues to represent himself in all other aspects of the criminal proceedings, including the investigation into, and presentation of, his defense at trial." (Citations omitted; footnote added.)

Following the trial court's reservation of the four questions presented in this matter for the consideration and advice of this court, the Office of the Chief Court Administrator (chief court administrator) and the Public Defender Services Commission (commission) sought permission to appear as amicus curiae in this matter. This court granted permission to both parties to appear and argue as amici curiae.

I

We must first determine whether this court has jurisdiction to decide the reserved questions of law, and if so, whether the questions presented are appropriately answered by way of a reservation. Section 52-235 (a) confers jurisdiction in this court to consider reserved questions "in all cases in which an appeal could lawfully have been taken to said court had judgment been rendered therein." If the defendant was to be convicted of murder in violation of § 53a-54a, a class A felony,[7] he could lawfully appeal to this court under General Statutes § 51-199 (b) (3).[8] Accordingly, this court has jurisdiction to decide the questions in this reservation.

Notwithstanding this court's jurisdiction, we must determine whether we should answer the reserved questions in accordance with the standards articulated in Practice Book § 73-1. Section 73-1 (f) provides that "[t]he court will not entertain a reservation for its advice upon questions of law arising in any action unless the question or questions presented are such as are, in the

opinion of the court, reasonably certain to enter into the decision of the case, and it appears that their present determination would be in the interest of simplicity, directness and economy of judicial action." The parties' joint stipulation and representations at oral argument before this court persuade us that the reserved questions at bar meet the settled criteria under our rules of practice.

The first reserved question asks whether an indigent defendant who has waived his right to counsel is constitutionally entitled to public funds to secure expert or investigative services that are reasonably necessary to formulate and present a defense. We conclude that this question is reasonably certain to enter into the decision in the present case and that its present resolution would further judicial economy. The defendant, a self-represented indigent party, maintains that he will require expert and investigative services to mount his defense to the pending charges. In his motions seeking court-ordered appointment of experts and investigators; see footnote 6 of this opinion; the defendant extensively documented his alleged history of mental illness and his possible intention to raise a defense of mental disease or defect.[9] At oral argument before this court, moreover, the state insisted that the defendant would require, at the very least, a mental health expert in order to respond to the state's request to provide notice of a defense of mental disease or defect.[10] Because this need for an expert is undisputed, we conclude that the first reserved question is properly before this court at this stage of the proceedings. Finally, our affirmative answer to the first reserved question necessarily renders the remaining reserved questions ripe for our consideration.

## II

We now turn to the first question in this reservation. Whether an indigent self-represented defendant is constitutionally entitled to expert or investigative services at public expense that are reasonably necessary to formulate and present a defense is a question of first impression for this court. The defendant claims that he has a due process right to access the basic tools of an adequate defense, including the reasonably necessary assistance of investigators and experts. The defendant further asserts that his due process right to a fair opportunity to present his defense pursuant to the fourteenth amendment to the federal constitution does not depend upon the nature of his legal representation pursuant to the sixth amendment to the federal constitution. Thus, while the defendant acknowledges that had he not waived his right to counsel and elected to represent himself, he would have had access to the full panoply of resources attendant to public defender representation,[11] he argues that he cannot be compelled to accept public defender representation, and to forgo the right to repre-

sent himself, in order to vindicate his right to access the basic tools of an adequate defense.

The state has not taken a position on the reserved questions other than to clarify its institutional interest in assuring the integrity of the defendant's criminal trial. The state agrees with the defendant, however, that the due process principle of fundamental fairness requires that an indigent defendant be afforded a fair opportunity to present his defense. For the reasons that follow, we conclude that an indigent self-represented criminal defendant has a fourteenth amendment due process right to publically funded expert or investigative services, to the extent that such services are reasonably necessary to formulate and to present an adequate defense to pending criminal charges.

Our conclusion is informed by certain general principles. The United States Supreme Court "has long recognized that when a [s]tate brings its judicial power to bear on an indigent defendant in a criminal proceeding, it must take steps to assure that the defendant has a fair opportunity to present his defense. This elementary principle, grounded in significant part on the [f]ourteenth [a]mendment's due process guarantee of fundamental fairness, derives from the belief that justice cannot be equal where, simply as a result of his poverty, a defendant is denied the opportunity to participate meaningfully in a judicial proceeding in which his liberty is at stake." *Ake* v. *Oklahoma*, 470 U.S. 68, 76, 105 S. Ct. 1087, 84 L. Ed. 2d 53 (1985).

Elaborating upon this principle, the Supreme Court has explained: "[A] criminal trial is fundamentally unfair if the [s]tate proceeds against an indigent defendant without making certain that he has access to the raw materials integral to the building of an effective defense. Thus, while the [c]ourt has not held that a [s]tate must purchase for the indigent defendant all the assistance that his wealthier counterpart might buy, see *Ross* v. *Moffitt*, 417 U.S. 600 [612, 94 S. Ct. 2437, 41 L. Ed. 2d 341 (1974) (declining to extend right to counsel to discretionary state appeals or petitions for certiorari)], it has often reaffirmed that fundamental fairness entitles indigent defendants to an adequate opportunity to present their claims fairly within the adversary system . . . . To implement this principle, we have focused on identifying the basic tools of an adequate defense or appeal . . . and we have required that such tools be provided to those defendants who cannot afford to pay for them." (Citations omitted; internal quotation marks omitted.) *Ake* v. *Oklahoma*, supra, 470 U.S. 77; see, e.g., *Britt* v. *North Carolina*, 404 U.S. 226, 297, 92 S. Ct. 431, 30 L. Ed. 2d 400 (1971) (access to mistrial transcript or its equivalent when necessary for effective defense or appeal); *Douglas* v. *California*, 372 U.S. 353, 83 S. Ct. 814, 9 L. Ed. 2d 811 (1963) (assistance of counsel on first direct appeal as of right); *Gideon* v.

*Wainwright*, 372 U.S. 335, 344, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963) (assistance of counsel at trial); *Burns* v. *Ohio*, 360 U.S. 252, 257–58, 79 S. Ct. 1164, 3 L. Ed. 2d 1209 (1959) (waiver of filing fee for notice of appeal of conviction); *Griffin* v. *Illinois*, 351 U.S. 12, 19–20, 76 S. Ct. 585, 100 L. Ed. 891 (1956) (access to trial transcript or its equivalent when necessary to decision on merits).

In *Ake* v. *Oklahoma*, supra, 470 U.S. 77, the Supreme Court examined whether, and under what circumstances, a state is required to provide an indigent defendant with access to a psychiatric expert to assist in preparing his defense. After the defendant in *Ake* pleaded not guilty by reason of insanity to murder charges, the defendant's counsel[12] sought and was denied a court-appointed psychiatrist, or funding to hire a psychiatrist, to examine the defendant with respect to his mental condition at the time of the offense. Id., 72. Relying on the due process balancing test articulated in *Mathews* v. *Eldridge*, 424 U.S. 319, 334–35, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), the Supreme Court in *Ake* considered three factors in evaluating the defendant's claim that he was entitled to expert assistance: "The first is the private interest that will be affected by the action of the [s]tate. The second is the governmental interest that will be affected if the safeguard is to be provided. The third is the probable value of the additional or substitute procedural safeguards that are sought, and the risk of an erroneous deprivation of the affected interest if those safeguards are not provided." *Ake* v. *Oklahoma*, supra, 77.

The court in *Ake* first identified "[t]he private interest in the accuracy of a criminal proceeding that places an individual's life or liberty at risk" as "almost uniquely compelling," "obvious," and "weigh[ing] heavily" in the analysis. Id., 78. Next, the court identified the state's interest in financial economy, observing that the state's monetary considerations were insubstantial "in light of the compelling interest of both the [s]tate and the individual in accurate dispositions." Id., 79. Last, the court recognized that "without the assistance of a psychiatrist to conduct a professional examination on issues relevant to the defense, to help determine whether the insanity defense is viable, to present testimony, and to assist in preparing the cross-examination of a [s]tate's psychiatric witnesses, the risk of an inaccurate resolution of sanity issues is extremely high." Id., 82.[13]

Balancing these factors, the Supreme Court held that when an indigent defendant makes a threshold showing that his sanity is likely to be a significant factor in his defense, due process requires that the state provide him access to a competent psychiatrist to "assist in evaluation, preparation, and presentation of the defense." Id., 83. Significantly, the Supreme Court grounded its holding in the due process clause's guaran-

tee of fundamental fairness; id., 87 n.13; under which a state must ensure that an indigent defendant has "access to the raw materials integral to the building of an effective defense." Id., 77. Indeed, "[b]ecause [the Supreme Court] conclude[d] that the [d]ue [p]rocess [c]lause guaranteed to [the petitioner] the assistance he requested and was denied, [the court] ha[d] no occasion to consider the applicability of the [e]qual [p]rotection [c]lause, or the [s]ixth [a]mendment, in this context." Id., 87 n.13.

We recognize that *Ake* left many questions unresolved regarding the scope of the due process right to expert assistance at public expense. As courts have grappled with defining the contours of this right, the most prevalent issue to arise has been whether *Ake* is limited to the assistance of psychiatric experts in capital cases. The majority of jurisdictions to consider this issue have concluded that *Ake* extends to noncapital cases[14] and to nonpsychiatric experts.[15] As a preliminary matter, we agree that the right articulated in *Ake* is not contingent upon the penalty sought or the field of assistance demanded, so long as that assistance is reasonably necessary for the indigent defendant to have "a fair opportunity to present his defense."[16] Id., 76.

Turning to the more nuanced question implicated in the present case, *Ake* did not expressly address whether a *self-represented* indigent defendant is constitutionally entitled to expert or investigative assistance that is reasonably necessary to assure the defendant a fair opportunity to present his defense. *Ake* made it abundantly clear, however, that the right to access the basic tools of an adequate defense is inherent under the fourteenth amendment due process clause. Id., 76, 87 n.13. For that reason, the sixth amendment right to counsel played no part in the *Ake* decision. Id., 86 n.13. On the basis of the reasoning in *Ake*, therefore, an indigent defendant's right to access the tools of an adequate defense should not depend on whether he is self-represented or represented by appointed counsel.

Nonetheless, the chief court administrator as amicus curiae maintains that an indigent defendant who waives his right to counsel is not constitutionally entitled to the basic tools of an adequate defense at public expense. The chief court administrator specifically contends that the state has satisfied the defendant's right to expert or investigative assistance by making these tools available through the acceptance of public defender representation. In our view, this argument conflates the right to counsel pursuant to the sixth amendment and the right to be provided with the basic tools of an adequate defense pursuant to the fourteenth amendment. As we have discussed previously, however, the due process right articulated in *Ake* is not tethered to the right to counsel. Therefore, we fail to understand why waiving the right to counsel also waives the right

to access the tools of an adequate defense.

To the extent that the chief court administrator acknowledges a separate due process right, it submits that it is permissible under *Ake* to require an indigent defendant to forgo his right of self-representation, and to accept public defender representation, in order to access ancillary tools of defense. We disagree. We recognize that "[t]he right to counsel and the right to self-representation present mutually exclusive alternatives. A criminal defendant has a constitutionally protected interest in each, but since the two rights cannot be exercised simultaneously, a defendant must choose between them."[17] (Internal quotation marks omitted.) *State* v. *Flanagan*, 293 Conn. 406, 418, 978 A.2d 64 (2009). Whereas the right of self-representation directly conflicts with the right to counsel pursuant to the sixth amendment, no such conflict exists between the right of self-representation and the right to access the basic tools of an adequate defense pursuant to the fourteenth amendment. Indeed, "an indigent defendant . . . is entitled *both* to the constitutional right to counsel *and* the constitutional right to be provided with the basic tools of an adequate defense."[18] (Emphasis added.) *State* v. *Brown*, 139 N.M. 466, 472, 134 P.3d 753 (2006); id., 473–74 (holding that constitutional considerations, along with state statutes providing for indigent criminal defense, mandate that indigent defendant represented by pro bono counsel be afforded same access to expert witness funding as indigent defendants represented by public defender). These two rights can be enjoyed simultaneously; one is not a substitute for the other. Because the right to self-representation and the right to expert assistance are not mutually exclusive and vindicate different interests, "we find it intolerable that one constitutional right should have to be surrendered in order to assert another." *Simmons* v. *United States*, 390 U.S. 377, 394, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968); id. (holding that defendant's testimony at suppression hearing on fourth amendment grounds may not thereafter be admitted against him at trial in contravention of fifth amendment right against self-incrimination). Simply put, we can conceive of no reason consistent with the distinct origin and nature of these rights why an indigent defendant should be compelled to forfeit his due process right to access basic tools of an adequate defense merely because he chooses to exercise the unrelated right to represent himself.[19] Accordingly, we decline the chief court administrator's invitation to construe *Ake* in a manner that would place the due process right of fundamental fairness out of reach to indigent self-represented defendants when no legal or logical necessity justifies it.

In the absence of any legal basis for requiring an indigent defendant to accept public defender representation to access ancillary tools of defense, the only justification offered for this requirement is administra-

tive convenience.[20] To this end, the chief court administrator argues that because defendants "typically" access defense tools through counsel, whether private or publicly appointed, it is logical for a state to " 'package' " the right to counsel with access to the basic tools of defense. Returning to the three part due process balancing test applied in *Ake* v. *Oklahoma*, supra, 470 U.S. 77, however, we conclude that administrative efficiency does not justify denying an indigent self-represented defendant a fair opportunity to present his defense.

First and foremost, the private interest at stake in the present case is exceptionally compelling: the imperative to obtain the resources necessary to present a meaningful defense in order to ensure the accuracy of the criminal proceeding. Without a doubt, *Ake* instructs us that when a defendant's life or liberty hangs in the balance, "[t]he interest of the individual in the outcome of the [s]tate's effort to overcome the presumption of innocence is obvious and weighs heavily in our analysis." Id., 78. The self-represented defendant in the present case, no less than the defendant in *Ake* who was represented by an attorney, has a vital interest in the safeguards that will afford him "an adequate opportunity to present [his] claims fairly within the adversary system . . . ." (Citation omitted; internal quotation marks omitted.) Id., 77.

Second, we must consider the state's countervailing interests in this case. On this score, the chief court administrator has asserted that administrative convenience justifies the requirement that an indigent defendant accept public defender representation in order to access the resources necessary to his defense.[21] Even if we were to assume that it is more administratively efficient to provide expert services in tandem with public defender representation, the state's interest in administrative efficiency is necessarily tempered by its shared interest in the integrity and fairness of the defendant's criminal trial.

Last, we must consider the probable value of providing the defendant access to expert or investigative services that are reasonably necessary to an adequate defense and the risk of error if such services are denied. Because the defendant in this case has raised the possibility of a mental disease or defect affirmative defense, the parallels to *Ake* are striking. In *Ake*, the Supreme Court observed that when a defendant's sanity is at issue, "the assistance of a psychiatrist may well be crucial to the defendant's ability to marshal his defense. In this role, psychiatrists gather facts . . . analyze the information gathered and from it draw plausible conclusions about the defendant's mental condition, and about the effects of any disorder on behavior; and they offer opinions about how the defendant's mental condition might have affected his behavior at the time in question." Id., 80. As the court did in *Ake*, we likewise con-

clude that "without the assistance of a psychiatrist to conduct a professional examination on issues relevant to the defense, to help determine whether the [mental disease or defect] defense is viable, to present testimony, and to assist in preparing the cross-examination of a [s]tate's psychiatric witnesses, the risk of an inaccurate resolution of sanity issues is extremely high." Id., 82. Issues of similar importance could arise in a case that turns on forensic evidence, as well as in other circumstances in which expert testimony is necessary to rebut the state's experts or to assert a defense.

In view of our preliminary determination that *Ake* is not limited to psychiatric experts in capital cases so long as the requested service is reasonably necessary to the defense, we additionally observe that the standard of reasonable necessity itself ensures that, on balance, the tools deemed integral to an adequate defense will enhance the potential accuracy of the criminal proceeding and reduce the risk of an erroneous deprivation of a defendant's liberty.[22] "Pursuant to the third of these [balancing] factors, due process does not require the provision of expert [or investigative] assistance relevant to an issue that is not likely to be significant at trial. Nor does due process require that an indigent defendant be provided all the assistance that a wealthier counterpart might buy. Rather, he or she is entitled only to the basic and integral tools necessary to ensure a fair trial." *State* v. *Mason*, 82 Ohio St. 3d 144, 149, 694 N.E.2d 932 (1998). Thus, the state is not obligated to "duplicate the legal arsenal that may be privately retained by a criminal defendant . . . but only to assure the indigent defendant an adequate opportunity to present his claims fairly . . . ." *Ross* v. *Moffitt*, supra, 417 U.S. 616.

Finally, we note that the probable value of expert or investigative assistance to the fair adjudication of the criminal proceedings in this case is not diminished by the fact that the defendant is self-represented, and is not represented by an attorney. To the contrary, we believe that expert or investigative assistance may well be more valuable to a self-represented defendant who presumably will experience greater difficulty in formulating and presenting his defense. In any event, we are left with the firm conviction that the *Ake* analysis does not change simply because a defendant invokes his right to represent himself.

Balancing the foregoing factors, we conclude that an indigent self-represented criminal defendant must be provided with expert or investigative assistance that is reasonably necessary to his defense. Without access to the resources necessary to the integrity of a fair trial, the due process right of fundamental fairness is hollow for self-represented defendants. Accordingly, we hold that due process, as guaranteed under the fourteenth amendment to the United States constitution, requires the state to provide an indigent self-represented crimi-

nal defendant with expert or investigative assistance when he makes a threshold showing that such assistance is reasonably necessary for the preparation and presentation of his defense.

## III

We now turn to the third and fourth reserved questions. We address these questions next because their resolution necessarily affects our conclusion regarding the second reserved question. The third and fourth reserved questions, in essence, ask this court to decide whether public funds for the reasonably necessary ancillary defense costs[23] of an indigent self-represented defendant should come from the Office of the Chief Public Defender or from the Judicial Branch. Neither the defendant nor the state has taken a position on this issue. The amici curiae in this case, however, have strongly opposing views on how ancillary defense costs for indigent self-represented defendants should be funded. We address each of these arguments in turn.

The commission urges this court to answer the third reserved question in the negative. The commission contends that it is not statutorily authorized to pay for the reasonably necessary expert and investigative fees of self-represented defendants. In the commission's view, the statutes governing public defender services, General Statutes § 51-289 et seq., require the commission to pay the reasonably necessary ancillary defense costs of its clients only, that is, indigent defendants who have specifically requested legal representation.[24] Moreover, the commission has adopted rules, under authority delegated by the legislature, precluding the use of the commission's funds for self-represented defendants.[25] Aside from the alleged lack of statutory authorization and the rules adopted by the commission, the commission argues that logistical hurdles would impede a self-represented defendant's ability to procure funding from the commission in an efficient and confidential manner.[26] Finally, the commission argues that funding ancillary defense costs for self-represented defendants constitutes legal representation that may subject the commission to claims of ineffective assistance of counsel.[27]

By contrast, the chief court administrator contends that the commission is statutorily authorized to provide funding for ancillary defense costs for indigent self-represented defendants, and, therefore, that the court should answer the third reserved question in the affirmative. Contrary to the commission's position, the chief court administrator maintains that nothing in the statutory provision governing the expenditures paid by the commission, General Statutes § 51-292, limits such expenditures to ancillary defense costs of indigent defendants who are fully represented by a public defender. Rather, the chief court administrator argues that the commission is authorized to provide funding for ancillary costs of indigent self-represented defendants

through the appointment of standby counsel.[28] Finally, the chief court administrator argues that funding should come from the commission because, unlike the Judicial Branch, the commission has been appropriated funding for the criminal defense of indigent individuals,[29] and it has the administrative mechanisms in place to ascertain which services are needed and to procure them when necessary. We agree that the commission is statutorily authorized to fund the reasonably necessary ancillary defense costs of indigent self-represented criminal defendants, and, therefore, we answer the third reserved question in the affirmative.

Whether the public defender statutes, § 51-289 et seq., authorize the commission to fund the reasonably necessary ancillary defense costs of indigent self-represented litigants is a question of statutory interpretation that we review according to well established principles. "[I]ssues of statutory construction raise questions of law, over which we exercise plenary review. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case . . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Citation omitted; internal quotation marks omitted.) *Kasica* v. *Columbia*, 309 Conn. 85, 93, 70 A.3d 1 (2013).

We begin our analysis by examining the text of the relevant statutes. Section 51-289 (g) provides in relevant part that "[t]he commission shall be responsible for carrying out the purposes of this chapter . . . ." Although the chapter of the General Statutes governing public defender services does not expressly define its purposes, we have had occasion to examine the purposes of the public defender system in *State* v. *Hudson*, 154 Conn. 631, 228 A.2d 132 (1967), and in *Gipson* v. *Commissioner of Correction*, 257 Conn. 632, 778 A.2d 121 (2001). "[Connecticut] was the first state to adopt the public defender system. Public Acts 1917, c. 225." *State* v. *Hudson*, supra, 635; see *Cooper* v. *Matzkin*, 160 Conn. 334, 339, 278 A.2d 811 (1971) ("Connecticut has been in the vanguard of jurisdictions which have adopted measures to assure to indigents in criminal cases the full protection of their legal rights regardless of their inability to pay for such protection"). In *State* v. *Hudson*, supra, 635, the court opined that the purpose of the public defender system, and thus the purpose of the chapter governing public defender services,[30] is to provide "for the protection of the rights of indigent

persons accused of crime." Furthermore, the court in *Gipson* observed that "the primary purpose of [No. 74-317, § 7, of the 1974 Public Acts (P.A. 74-317), which was codified at General Statutes § 51-296, governing the designation of public defenders for indigent defendants] was the creation of a [P]ublic [D]efender [S]ervices [C]ommission to administer the public defender system *in lieu of the judges of the Superior Court*, who previously had been responsible for that function." (Emphasis added.) *Gipson* v. *Commissioner of Correction*, supra, 648. Therefore, by designating the commission as the agency responsible for carrying out the purposes of the chapter governing public defender services, the legislature has charged the commission with protecting the rights of indigent criminal defendants.

In fulfillment of this statutory mandate, the services provided by the commission to indigent defendants include both legal representation and ancillary tools of defense. See General Statutes § 51-289 (h) ("[*p*]*ublic defender services* shall be executed by a Chief Public Defender, a deputy chief public defender, public defenders, assistant public defenders, deputy assistant public defenders, *investigators and other personnel which the commission deems necessary*" [emphasis added]); General Statutes § 51-291 (3) ("[the Chief Public Defender shall] [w]ith the approval of the commission . . . select *such professional, technical and other personnel, including investigators*, as the Chief Public Defender deems *reasonably necessary for the efficient operation and discharge of the duties of public defender services* under this chapter" [emphasis added]). It is thus clear from the statutory scheme that some public defender services are carried out by "investigators" and "other personnel" in a nonlegal representative capacity. Therefore, the commission satisfies its mandate to protect the rights of indigent defendants by providing legal representation and ancillary tools of defense, including experts and investigators.

Because the commission is required to provide the services necessary to protect the rights of indigent defendants, the statutes governing public defender services expressly include necessary ancillary defense costs within the commission's budget. Section 51-292, the statutory provision delineating the expenses that are included in the commission's budget, provides as follows: "*Reasonable expenses of, or incurred by*, the commission, the Chief Public Defender, *or those serving pursuant to the provisions of this chapter*, including rental of facilities, witnesses summoned, costs of transcripts ordered from court reporters, costs of service of process, and costs of equipment, and *other necessary disbursements or costs of defense* shall be paid from the budget of the commission upon approval of the commission." (Emphasis added.) In other words, § 51-292 unequivocally requires that "[r]easonable expenses," including "necessary disbursements or

costs of defense," that are "incurred by . . . those serving pursuant to the provisions of this chapter" must be paid from the commission's budget upon its approval. Significantly, the statutes do not limit the provision of defense costs to indigent defendants who have accepted public defender representation. For the reasons that follow, we conclude that the qualification of "those serving pursuant to the provisions of this chapter" in § 51-292 includes a public defender or special public defender who has been appointed as standby counsel for an indigent self-represented defendant.

A trial court may appoint standby counsel to assist a self-represented defendant, even over the objection of the defendant. See *Faretta* v. *California*, 422 U.S 806, 835 n.46, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975) ("a [s]tate may—even over objection by the accused— appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary"); accord Practice Book § 44-4 ("When a defendant has been permitted to proceed without the assistance of counsel, the judicial authority may appoint standby counsel, especially in cases expected to be long or complicated or in which there are multiple defendants. A public defender or special public defender may be appointed as standby counsel only if the defendant is indigent and qualifies for appointment of counsel under . . . § 51-296, except [for] in extraordinary circumstances . . . ."). As the Supreme Court has explained, "[a] defendant's [s]ixth [a]mendment rights are not violated when a trial judge appoints standby counsel— even over the defendant's objection—to relieve the judge of the need to explain and enforce basic rules of courtroom protocol *or to assist the defendant in overcoming routine obstacles* that stand in the way of the defendant's achievement of his own clearly indicated goals. *Participation by counsel to steer a defendant through the basic procedures of trial is permissible* even in the unlikely event that it somewhat undermines the pro se defendant's appearance of control over his own defense." (Emphasis added.) *McKaskle* v. *Wiggins*, 465 U.S. 168, 184, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984).

The statutes governing public defender services require the chief public defender to maintain a list of attorneys who may be appointed as standby counsel for self-represented defendants, as needed. See General Statutes § 51-291 (11) ("[the Chief Public Defender must] [m]aintain one or more lists of trial lawyers who may be available to represent persons in . . . appropriate matters on a case by case basis, as needed, which lawyers shall be selected by a judge of the court before which the matter is to be heard"). Furthermore, the legislature directed that compensation for standby counsel is to be paid from the commission's budget.

See General Statutes § 51-291 (12) ("compensation for lawyers selected under subdivision [11] of this section . . . [is] to be paid from the budget of the [commission]"). Accordingly, when a court appoints standby counsel for an indigent self-represented defendant, standby counsel is "serving pursuant to the provisions of [the] chapter" governing the public defender system. General Statutes § 51-292. We conclude, therefore, that the legislature, by including reasonably necessary defense costs "incurred by . . . those serving pursuant to the provisions of this chapter"; General Statutes § 51-292; expressly authorized the commission to fund reasonably necessary defense costs for indigent self-represented defendants for whom standby counsel has been appointed.[31] Our conclusion in this regard is clear from the text of the relevant statutes considered in the context of the statutory scheme.

In sum, the trial court is authorized to appoint standby counsel, and the commission is authorized to fund reasonably necessary ancillary defense costs incurred by standby counsel who, thusly appointed, is serving pursuant to the provisions of the chapter of the General Statutes governing public defender services. Standby counsel, upon request by the indigent self-represented defendant, may seek approval from the commission to incur "[r]easonable expenses" for "necessary . . . costs of defense" that "shall be paid from the budget of the commission upon approval of the commission." General Statutes § 51-292. Thus, an indigent self-represented defendant may access funding for reasonably necessary defense costs through standby counsel.[32]

We underscore that indigent self-represented defendants are entitled to no more than the same minimum constitutional level of reasonably necessary ancillary costs as are those indigent defendants represented by public defenders. The commission is not required to approve every request made by standby counsel on behalf of indigent self-represented defendants, but only those costs constitutionally mandated. Thus implicit in the phrase "upon approval of the commission" in § 51-292 is the recognition that the commission may use its own established procedures for evaluating whether ancillary costs are reasonably necessary. Accordingly, we conclude that the commission is statutorily authorized to fund the reasonably necessary ancillary defense costs of indigent self-represented litigants, and, therefore, we answer the third reserved question in the affirmative.[33]

IV

Finally, we return to the second reserved question, which asks whether the trial court retains discretion to authorize public funding for ancillary defense costs for self-represented defendants based upon its threshold determination that such costs are reasonably necessary to an adequate defense. Because we conclude that

the statutes governing public defender services, § 51-289 et seq., vest authority in the commission as an autonomous body for fiscal purposes, and require the commission to approve reasonably necessary defense costs prior to expenditure from the commission's budget, we answer the second reserved question in the negative.

As a preliminary matter, both the state and the defendant suggest that, in accordance with the prevailing practice in most jurisdictions,[34] the trial court should retain discretion to authorize public funding based upon the defendant's threshold showing of reasonable necessity. By contrast, the amici agree that if reasonably necessary ancillary defense costs for indigent self-represented defendants are funded from the commission's budget, as our affirmative response to the third reserved question directs, then the commission should make the threshold determination of whether defense costs are reasonably necessary. We agree with the amici.

Our conclusion is informed by the relevant statutory language. General Statutes § 51-289 (*l*) provides in relevant part that "[t]he commission shall be an autonomous body within the Judicial [Branch] *for fiscal and budgetary purposes* only." (Emphasis added.) The statute thus expressly provides that the commission is to retain control over its budget and expenditures. As we discussed in part III of this opinion, the commission's expenditures include "[r]*easonable* expenses" of "*necessary* disbursements or costs of defense" that are to "be paid from the budget of the commission *upon approval of the commission.*" (Emphasis added.) General Statutes § 51-292. Putting these elements together, it is clear that § 51-292 presently requires the commission to make a threshold determination of whether defense costs are reasonably necessary prior to payment from the commission's budget.[35] It would thus run counter to the procedure set forth in § 51-292 and, thereby, encroach on the fiscal autonomy vested in the commission by the legislature under § 51-289 (*l*), to allow the trial court to determine whether defense costs are reasonably necessary, and to order the commission to fund these costs from its budget without the commission's prior approval.[36]

Because the commission must approve reasonably necessary defense costs that are expended from its budget, the commission has promulgated internal procedures for the approval of defense expenses. Pursuant to the commission's policy manual, "[a]ttorneys representing public defender clients must obtain prior approval to hire experts and incur case related expenses" by submitting, in writing, a form providing a detailed explanation of the nature of the case and the reasons why the expert or other service is necessary for the defense. Public Defenders Services Commission, Administrative Manual: Policies and Procedures (June

2008) c. 4, p. 4-1. The level of approval required depends on the estimated cost and type of service requested. See footnote 35 of this opinion. An indigent self-represented defendant may navigate the commission's existing administrative procedures through standby counsel.

As we explained previously in this opinion, the commission is authorized to fund reasonably necessary defense expenses incurred by "those serving pursuant to the provisions of this chapter"; General Statutes § 51-292; and standby counsel, who are expressly provided for in § 51-291 (11), and who may be appointed by the trial court under § 51-293 (a) (2) and Practice Book § 44-4, qualify as "those serving pursuant to the provisions of this chapter" pursuant to § 51-292. See General Statutes § 51-291 (11) ("[the Chief Public Defender must] [m]aintain one or more lists of trial lawyers who may be available to . . . represent persons in other appropriate matters on a case by case basis, as needed, which lawyers shall be selected by a judge of the court before which the matter is to be heard"); General Statutes § 51-293 (a) (2) ("a judge of the Superior Court [may appoint] a Division of Public Defender Services assigned counsel on a contractual basis for a temporary period of time in an appropriate case, whose expenses and compensation shall be paid from the budget of the [commission]"). Therefore, the trial court may appoint standby counsel to assist an indigent self-represented defendant in procuring funding for reasonably necessary defense costs pursuant to the commission's current administrative procedures.[37]

Finally, our determination that the commission, rather than the trial court, must determine what expenses are reasonably necessary to a self-represented litigant's criminal defense is also supported by considerations regarding separation of powers. The legislature created the commission, in part, in order to separate the administration of the public defender system from the Judicial Branch. See *Gipson* v. *Commissioner of Correction*, supra, 257 Conn. 648 ("the primary purpose of P.A. 74-317 was the creation of a [P]ublic [D]efender [S]ervices [C]ommission to administer the public defender system in lieu of the judges of the Superior Court, who previously had been responsible for that function"). Requiring the trial court to determine whether certain experts or investigators are reasonably necessary to the defense could potentially call the trial court's role as a neutral arbiter into question. Our negative answer to the second reserved question avoids this potential conflict.

## VI

To summarize our holding in this case, we conclude that an indigent self-represented defendant has a fourteenth amendment due process right to be provided public funds to obtain expert or investigative assistance, provided that he makes a threshold showing that

such assistance is reasonably necessary for the preparation and presentation of an adequate defense. The due process principle of fundamental fairness requires that a state afford an indigent self-represented defendant a fair opportunity to present his defense by assuring him access to the basic tools of an adequate defense. Accordingly, we answer the first reserved question in the affirmative.

Next, we conclude that the trial court does not retain discretion to authorize public expenditures for expert or investigative services for indigent self-represented defendants. Instead, the statutes governing public defender services require the commission to authorize public expenditures, to be paid from the commission's budget, for expert or investigative services for indigent self-represented defendants when the commission determines, as a threshold matter, that such services are reasonably necessary to the defense. Therefore, we answer the second reserved question in the negative.

Finally, we conclude that the commission is statutorily authorized to provide funding for reasonably necessary expert or investigative services for indigent self-represented defendants. Accordingly, we answer the third reserved question in the affirmative. Because we answer the third reserved question in the affirmative, we do not answer the fourth reserved question.

The first reserved question is answered "Yes." The second reserved question is answered "No." The third reserved question is answered "Yes." The case is remanded to the trial court with direction to proceed in accordance with this opinion.

No costs shall be taxed in this court to either party.

In this opinion the other justices concurred.

[1] General Statutes § 52-235 provides in relevant part: "(a) The Superior Court, or any judge of the court, with the consent of all parties of record, may reserve questions of law for the advice of the Supreme Court . . . in all cases in which an appeal could lawfully have been taken to said court had judgment been rendered therein. . . ."

[2] Practice Book § 73-1 provides in relevant part: "(c) Before any question shall be reserved by any court, counsel shall file in that court a stipulation which shall clearly and fully state the question or questions upon which advice is desired; that their present determination by the appellate court having jurisdiction would be in the interest of simplicity, directness and economy in judicial action, the grounds for such allegation being particularly stated; that the answers to the questions will determine, or are reasonably certain to enter into the final determination of the case; and that the parties request that the questions be reserved for the advice of the appellate court having jurisdiction. . . .

"(f) The court will not entertain a reservation for its advice upon questions of law arising in any action unless the question or questions presented are such as are, in the opinion of the court, reasonably certain to enter into the decision of the case, and it appears that their present determination would be in the interest of simplicity, directness and economy of judicial action. . . ."

[3] As framed by the parties, the second reserved question asked whether the trial court retains discretion to authorize public expenditure based upon the trial court's threshold determination "as to the relevance of the expert's potential testimony." As set forth in this opinion, the threshold inquiry is not merely a question of relevance, but whether the requested services are reasonably necessary to the defense. Therefore, we have reformulated the second reserved question accordingly. See *State* v. *Ouellette*, 295 Conn. 173,

184, 989 A.2d 1048 (2010) (reformulating certified question to conform to issue actually presented and decided in appeal); *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 276 Conn. 168, 191, 884 A.2d 981 (2005) (same); *Gianetti* v. *Norwalk Hospital*, 211 Conn. 51, 57, 557 A.2d 1249 (1989) (reframing questions in reservation that parties had framed too broadly).

[4] The fourth reserved question was framed as two unrelated questions, the second of which was: "If the answer to question one (1) above is [in the negative, must] the [d]efendant . . . decide whether to continue to represent himself pro se without state funded experts and investigator[s], or [must the defendant] request a full-time public defender to undertake an investigation on his behalf?" Because we answer the first reserved question in the affirmative, we exclude this question from our discussion of the reservation in the text of this opinion.

[5] These facts are set forth in the reservation presented to this court by the trial court, *Clifford*, *J.*, on July 29, 2013, upon the request and consent of the parties. No transcripts were filed in this court in connection with this reservation.

[6] The record reflects that on January 10, 2012, the defendant filed two motions in the trial court: (1) a motion seeking a court order "appointing a private independent investigator for the defendant, herein, to conduct an investigation on issues related to the gun issues, and to report his/her findings to the defendant only"; and (2) a motion seeking, inter alia, a court order "appointing a forensic scientist for each subspecialty forensic discovery, to examine the forensic reports produced by the state, and to report their findings to the defendant only." In the second motion, the defendant claimed that the assistance of an expert and investigator was necessary to "understand how each evidentiary item (or sample) was collected, transported, transferred, prepared, and tested [and] is essential for the defendant to represent himself properly and effectively."

On April 16, 2012, the defendant filed a motion in the trial court seeking a court order "appointing a psychiatrist and an investigator for the defendant herein, to examine said [d]efendant's past history of mental illness and to report their findings to the defendant only." In this motion, the defendant extensively documented his alleged mental health issues and stated that his "mental status should be examined clinically in order to determine whether the defendant should be considered as 'insane.' Before a diagnosis or evaluation is made, it is inconclusive whether the defendant will or will not consider 'insanity' or '[extreme] emotional distress' as part of the defense."

[7] General Statutes § 53a-54a provides in relevant part: "(a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception . . . .

"(b) Evidence that the defendant suffered from a mental disease, mental defect or other mental abnormality is admissible, in a prosecution under subsection (a) of this section, on the question of whether the defendant acted with intent to cause the death of another person.

"(c) Murder is punishable as a class A felony . . . ."

We note that changes, not relevant to this appeal, were made to subsection (c) in 2012. See Public Acts 2012, No. 12-5, § 7. For convenience, we refer to the current revision of the statute.

[8] General Statutes § 51-199 (b) (3) provides in relevant part that the Supreme Court shall have jurisdiction over "an appeal in any criminal action involving a conviction for a capital felony . . . class A felony or any other felony . . . for which the maximum sentence which may be imposed exceeds twenty years . . . ."

[9] Additionally, the record reflects that on September 28, 2010, the trial court, *Fasano*, *J.*, found by a preponderance of the evidence that the defendant was not competent to stand trial and ordered that the defendant be placed with the Commissioner of Mental Health and Addiction Services, as permitted under General Statutes § 54-56 (d), for a course of treatment. After a hearing on February 28, 2011, the trial court, *Fasano*, *J.*, found the defendant competent to stand trial.

[10] On June 27, 2012, the state requested that the defendant provide notice of a defense of mental disease or defect, or extreme emotional disturbance. The state further requested notice of the defendant's intention to use expert testimony regarding his mental state. Finally, the state requested that the defendant furnish the state with copies of any records of physical or mental examinations of the defendant prepared by an expert whom the defendant intends to call as a witness in connection with the pending charges.

[11] The statutes governing public defender services, General Statutes § 51-289 et seq., specifically provide for the payment of reasonable expenses for

those serving pursuant to the provisions of that chapter of the statutes from the budget of the commission upon its approval. See General Statutes § 51-289 (h) ("[p]ublic defender services shall be executed by a Chief Public Defender, a deputy chief public defender, public defenders, assistant public defenders, deputy assistant public defenders, investigators and other personnel which the commission deems necessary"); General Statutes § 51-292 ("[r]easonable expenses of, or incurred by, the commission, the Chief Public Defender, or those serving pursuant to the provisions of this chapter, including rental of facilities, witnesses summoned, costs of transcripts ordered from court reporters, costs of service of process, and costs of equipment, and other necessary disbursements or costs of defense shall be paid from the budget of the commission upon approval of the commission").

[12] The defendant in *Ake* was represented by an attorney, but it is unclear whether the defendant's counsel was a court-appointed public defender. See *Ake* v. *Oklahoma*, supra, 470 U.S. 72. The record is clear, however, that the defendant was indigent and unable to afford a psychiatrist. Id.

[13] We note that in *Ake* v. *Oklahoma*, supra, 470 U.S. 78 n.4, 80 n.6, the Supreme Court cited to this court's decision in *State* v. *Clemons*, 168 Conn. 395, 363 A.2d 33, cert. denied, 423 U.S. 855, 96 S. Ct. 104, 46 L. Ed. 2d 80 (1975), as an example of how state courts have interpreted state or federal constitutions to require that a state provide an indigent defendant access to expert assistance when necessary for an adequate defense.

In *State* v. *Clemons*, supra, 168 Conn. 401–402, the defendant had appealed from his conviction of, inter alia, possession of heroin with intent to sell on the ground that the trial court abused its discretion in denying his motion for authorization to expend funds for an independent toxicological examination. Counsel for the defendant and the state stipulated that the defendant was indigent and unable to pay the cost of an independent examination. Id.

On appeal, this court opined that "[w]here the state has access to expert testimony and plans to utilize such testimony, the state should provide an indigent defendant access to an independent expert upon a showing of reasonable necessity by the defendant for such an expert. It is not, however, the defendant's status as an indigent alone that requires this but rather a showing by an indigent defendant that such expert testimony is material and necessary to provide an adequate defense. . . . This court encourages the necessary expenditure of state funds to provide indigents with an adequate means of presenting reasonable defenses." Id., 403–404.

[14] See, e.g., *Cowley* v. *Stricklin*, 929 F.2d 640, 643–44 (11th Cir. 1991); *Little* v. *Armontrout*, 835 F.2d 1240, 1243 (8th Cir. 1987); *Palmer* v. *State*, 486 N.E.2d 477, 481–82 (Ind. 1985); *State* v. *Coker*, 412 N.W.2d 589, 592–93 (Iowa 1987); *State* v. *Dunn*, 243 Kan. 414, 419–20, 758 P.2d 718 (1988); *Moore* v. *State*, 390 Md. 343, 364, 889 A.2d 325 (2005), cert. denied, 549 U.S. 813, 127 S. Ct. 59, 166 L. Ed. 2d 22 (2006); *People* v. *Stone*, 195 Mich. App. 600, 605–606, 491 N.W.2d 628 (1992); *Pertgen* v. *State*, 105 Nev. 282, 284, 774 P.2d 429 (1989); *State* v. *Campbell*, 127 N.H. 112, 115–16, 498 A.2d 330 (1985); *State* v. *Barnett*, 909 S.W.2d 423, 427 (Tenn. 1995); *Taylor* v. *State*, 939 S.W.2d 148, 152 (Tex. Crim. App. 1996); but see *Isom* v. *State*, 488 So. 2d 12, 13 (Ala. 1986); *Bannister* v. *State*, 726 S.W.2d 821, 827–28 (Mo. 1987).

[15] See, e.g., *Terry* v. *Rees*, 985 F.2d 283, 284 (6th Cir. 1993) (pathologist); *Dunn* v. *Roberts*, 963 F.2d 308, 313 (10th Cir. 1992) (battered spouse syndrome expert); *Scott* v. *Louisiana*, 934 F.2d 631, 633 (5th Cir. 1991) (ballistics expert); *Ex parte Moody*, 684 So. 2d 114, 118–19 (Ala. 1996) (applicable to nonpsychiatric experts generally); *Ex parte State*, 662 So. 2d 1189, 1194 (Ala. 1995) (DNA expert); *Ex parte Sanders*, 612 So. 2d 1199, 1201–1202 (Ala. 1993) (ballistics expert); *Doe* v. *Superior Court*, 39 Cal. App. 4th 538, 545–46, 45 Cal. Rptr. 2d 888 (1995) (experts on battered spouse and post-traumatic stress syndromes); *Bright* v. *State*, 265 Ga. 265, 276, 455 S.E.2d 37 (1995) (toxicologist); *Crawford* v. *State*, 257 Ga. 681, 687, 362 S.E.2d 201 (1987) (serologist, psychologist, pathologist, survey expert); *Thornton* v. *State*, 255 Ga. 434, 434–35, 339 S.E.2d 240 (1986) (forensic dentist); *People* v. *Lawson*, 163 Ill. 2d 187, 229–30, 644 N.E.2d 1172 (1994) (fingerprint and shoe print experts); *James* v. *State*, 613 N.E.2d 15, 21 (Ind. 1993) (blood spatter expert); *State* v. *Coker*, 412 N.W.2d 589, 593 (Iowa 1987) (expert to assist with intoxication defense); *State* v. *Moore*, 321 N.C. 327, 342–47, 364 S.E.2d 648 (1988) (psychiatrist and fingerprint expert); *State* v. *Mason*, 82 Ohio St. 3d 144, 150–53, 694 N.E.2d 932 (1998) (nonpsychiatric experts generally); *Rogers* v. *State*, 890 P.2d 959, 966 (Okla. Crim. App. 1995) (any expert necessary for adequate defense); *State* v. *Rogers*, 313 Or. 356, 366–67, 836 P.2d 1308 (1992) (opinion polling expert); *Rey* v. *State*, 897 S.W.2d 333, 338–39 (Tex. Crim. App. 1995) (forensic pathologist).

In predominant part, the cases evaluating an indigent defendant's right to access the basic tools of an adequate defense involve a defendant's request for expert witnesses. Courts, however, have applied the same due process analysis when evaluating a defendant's request for other ancillary defense services, including an investigator to assist in preparing a defense. See *State* v. *Martin*, 146 Idaho 357, 363, 195 P.3d 716 (App. 2008) (defendant failed to demonstrate that laboratory tests were necessary to defense); *State* v. *Lovelace*, 140 Idaho 53, 65–66, 90 P.3d 278 (2003) ("[a] defendant's request for expert *or investigative services* should be reviewed in light of all circumstances and be measured against the standard of 'fundamental fairness' embodied in the due process clause" [emphasis added]), aff'd on rehearing, 140 Idaho 73, 75, 90 P.3d 298 (2004); *State* v. *Hickey*, 317 N.C. 457, 469, 346 S.E.2d 646 (1986) (defendant failed to demonstrate particularized need for investigator); *Castro* v. *State*, 844 P.2d 159, 175 (Okla. Crim. App. 1992) (defendant failed to demonstrate that investigator was necessary to adequate defense); *Dowdy* v. *Commonwealth*, 278 Va. 577, 594–95, 686 S.E.2d 710 (2009) (defendant failed to demonstrate particularized need for investigator); but see *DeFries* v. *State*, 597 So. 2d 742, 745–46 (Ala. Crim. App. 1992) (evaluating self-represented defendant's request for investigator under sixth amendment and concluding that defendant waived benefit of investigative assistance with waiver of appointed counsel); *Commonwealth* v. *Bardo*, 551 Pa. 140, 149, 709 A.2d 871 ("[*Ake* v. *Oklahoma*, supra, 470 U.S. 68] concerns court-appointed psychiatrists, not investigators, and it has no application to [the issue of whether due process requires the appointment of an investigator]"), cert. denied, 525 U.S. 936, 119 S. Ct. 350, 142 L. Ed. 2d 289 (1998); cf. *English* v. *Missildine*, 311 N.W.2d 292, 293–94 (Iowa 1981) ("[f]or indigents the right to effective counsel includes the right to public payment for reasonably necessary investigative services").

[16] As the Tennessee Supreme Court reasoned in *State* v. *Barnett*, 909 S.W.2d 423, 428 (Tenn. 1995), "[w]e agree with the jurisdictions that have applied the *Ake* principle in the non-capital context because the due process principle of fundamental fairness requires that a [s]tate which prosecutes an indigent defendant assure that defendant of a fair opportunity to present his defense. It is axiomatic that fairness cannot exist where an indigent defendant is deprived by poverty of a meaningful opportunity to defend when his liberty is at stake. The due process principle of fundamental fairness applies to all criminal prosecutions, and does not rest upon the severity of the sanction sought or imposed."

We likewise agree that "[t]here is no principled way to distinguish between psychiatric and nonpsychiatric experts. The question in each case must be not what field of science or expert knowledge is involved, but rather how important the scientific issue is in the case, and how much help a defense expert could have given." *Little* v. *Armontrout*, 835 F.2d 1240, 1243 (8th Cir. 1987). Accordingly, we agree that the right articulated in *Ake* is not limited to the assistance of psychiatric experts in capital cases.

[17] We recognize that "[w]hen an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel." *Faretta* v. *California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975); see also Practice Book § 44-3 (4) (requiring that trial court canvass defendant who requests to represent himself to ensure that he "[h]as been made aware of the dangers and disadvantages of self-representation"). Because the right to access the basic tools of an adequate defense emanates from the due process guarantee of fundamental fairness, however, it cannot be said that the right to access the basic tools of an adequate defense is a "traditional benefit" associated with the right to counsel. See *Ake* v. *Oklahoma*, supra, 470 U.S. 86 n.13.

[18] Our holding in this case is limited to the provision of publicly funded expert or investigative assistance for an indigent self-represented defendant at a criminal trial. Accordingly, we express no view as to whether an indigent defendant represented by pro bono counsel is entitled access to public funding for expert or investigative assistance.

[19] We acknowledge that some jurisdictions have held that a state may condition the provision of reasonably necessary defense tools on the acceptance of public defender representation. See, e.g., *People* v. *Cardenas*, 62 P.3d 621, 623 (Colo. 2002) (denying indigent defendant represented by pro bono counsel publicly funded interpreter because indigent defendant "does not have the right to pick the attorney of his choice"); *Moore* v. *State*, 390 Md. 343, 378, 889 A.2d 325 (2005) ("Indigent defendants may utilize the [Office of the Public Defender's] complete 'package' of services, or forgo them entirely. . . . [T]he [c]onstitution does not bar the [s]tate of Maryland

from requiring them to choose between counsel of their choice and ancillary services provided by the [Office of the Public Defender].”), cert. denied, 549 U.S. 813, 127 S. Ct. 59, 166 L. Ed. 2d 22 (2006).

We disagree with the reasoning applied in those cases, however, and further distinguish them factually from the present case. For instance, in *Moore* v. *State*, supra, 390 Md. 372–75, the Maryland Court of Appeals addressed the issue of whether an indigent criminal defendant who has retained private counsel using his limited personal funds, but who is unable to afford the assistance of a DNA expert, is constitutionally entitled to public funding for expert assistance. The court concluded that requiring an indigent defendant to accept public defender representation in order to access expert assistance is a “procedural requirement” that does not violate an indigent defendant’s constitutional rights. Id., 378. The court in *Moore* reasoned that such a “procedural requirement” is permissible under *Ake* because “[t]he [United States] Supreme Court contemplated in *Ake* that [s]tates could place restrictions on indigent defendants’ access to state-funded expert services.” Id., 374, citing *Ake* v. *Oklahoma*, supra, 470 U.S. 83.

First, we do not agree with the interpretation of *Ake* by the court in *Moore*. We acknowledge that the Supreme Court in *Ake* stated in dicta that an indigent defendant does not have a “constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own”; *Ake* v. *Oklahoma*, supra, 470 U.S. 83; and it left “to the [s]tates the decision on how to implement this right.” Id. We interpret *Ake* to *reasonably limit* the right to expert assistance, however, not to permit a state to impose a choice between two constitutional rights that are not mutually exclusive.

Additionally, the facts in the present case are distinguishable from *Moore* because the defendant in that case had hired his own counsel, which implicates the principle that a defendant does not have a constitutional right to counsel of his or her choice. See *Moore* v. *State*, supra, 390 Md. 378 (“the [c]onstitution does not bar . . . requiring [indigent defendants] to choose between counsel of their choice and ancillary services provided by the [Office of the Public Defender]”). By contrast, in the present case we are confronted with the limited question of whether it is permissible under *Ake* to require an indigent defendant to forgo his constitutional right of self-representation pursuant to the sixth amendment in order to access the basic tools of an adequate defense pursuant to the fourteenth amendment. For the reasons stated herein, we conclude that *Ake* does not permit such a requirement.

[20] To the extent that the amici have further suggested that economic efficiency militates in favor of denying public funding for experts or investigators for indigent self-represented defendants, we reject this contention. We are highly skeptical of the purported economic efficiencies to be gained from “ ‘packag[ing]’ ” the right to counsel and the right to access the tools of an adequate defense. Had the defendant accepted public defender representation, the commission acknowledges that it would have borne the full cost of that representation, including any approved expert or investigative fees. We fail to understand how requiring an indigent defendant to accept full representation *and* the attendant costs thereof would lessen the state’s economic burden.

To the contrary, reason would suggest that decoupling the rights would be less expensive for the state. See *English* v. *Missildine*, 311 N.W.2d 292, 294 (Iowa 1981) (rejecting dubious wisdom of “furnish[ing] both counsel and investigative services in cases where the indigent needs and requests public payment for only investigative services” because doing so “would impose an unreasonable and unnecessary additional burden on the public treasury”); *State* v. *Handson*, 166 Vt. 85, 89, 689 A.2d 1081 (1996) (“The [claim by the Office of the Defender General (public defender)] that [its] budget is not sufficient to accommodate [the cost of services for pro se indigent defendants] is somewhat perplexing. Payment for the services that permit a defendant to exercise the right to appear pro se is not an extra expense imposed on the [public defender], but a substitute for the expense of representation by counsel.”). Furthermore, the state’s financial obligations in this regard will, as a practical matter, be constrained by the threshold showing of reasonable necessity that a self-represented defendant must demonstrate to the commission. See part III of this opinion.

[21] At oral argument before this court, the state posited that requiring acceptance of public defender representation in order to access funding for expert or investigative assistance furthers the state’s interest in institutional integrity. Calling attention to the “havoc that pro se defendants can wreak on the system,” the state suggested that while this court must respect the

right of self-representation, this court need not encourage it.

We are well aware of the institutional challenges that self-represented litigants present to our judicial system. Notwithstanding these challenges, we must not abandon for the sake of convenience our long-standing dedication to safeguarding the rights of the accused. In addition to the due process right to a fair opportunity to present a defense pursuant to the fourteenth amendment, the present case implicates the inviolable right of self-representation pursuant to the sixth amendment. Respecting the right of self-representation is by no means the least difficult path, but it is the path we must choose because it honors the "respect for the individual which is the lifeblood of the law." (Internal quotation marks omitted.) *State* v. *Webb*, 238 Conn. 389, 427–28, 680 A.2d 147 (1996), aff'd after remand, 252 Conn. 128, 750 A.2d 448, cert. denied, 531 U.S. 835, 121 S. Ct. 93, 148 L. Ed. 2d 53 (2000).

[22] We need not decide in this reservation the probable value of the specific assistance that the defendant has sought by motion in the trial court. As we discuss in part III of this opinion, we leave to the commission in this case to decide whether the experts and investigators that the defendant has requested are reasonably necessary to his defense.

[23] The term "ancillary defense costs," as we use it throughout this opinion, refers to costs for providing nonrepresentative tools of defense, including expert witnesses and investigators. The term, as we use it, is synonymous with "disbursements or costs of defense" as provided for in the commission's budget under General Statutes § 51-292.

[24] The commission argues that under § 51-289 (h), public defender services are limited to those services which were provided by public defenders prior to July 1, 1978, and, furthermore, that it is aware of no cases in which a public defender paid for defense expenses incurred by a self-represented defendant. See General Statutes § 51-289 (h) ("[p]ublic defender services shall consist of those duties carried out by Superior Court and Court of Common Pleas public defenders prior to July 1, 1978, those duties carried out by the [commission] prior to July 1, 2011, and those responsibilities provided for by this chapter").

In a similar vein, the commission maintains that paying for reasonably necessary ancillary defense costs for self-represented defendants from the commission's budget would result in a deficit of funding appropriated for the legal defense of indigent clients represented by the Office of the Chief Public Defender. Under General Statutes § 51-291 (13), the chief public defender has the responsibility to "[p]repare and submit to the commission estimates of appropriations necessary for the maintenance and operation of public defender services, and make recommendations with respect thereto; and with the approval of the commission, and after such modification as the commission directs, submit the budget requests to the Governor." The commission claims that it has not historically taken into account funding for self-represented defendants. Therefore, the commission is concerned that it has not allocated sufficient funds for the payment of ancillary defense costs for such defendants. For the reasons set forth in footnote 20 of this opinion, we do not agree with the commission's fiscal concerns.

[25] The commission has statutory authority to "adopt rules relating to the operations of a Division of Public Defender Services . . . ." General Statutes § 51-289 (g). Pursuant to this authority, the commission has promulgated a policy prohibiting expenditure from its budget for the defense of self-represented defendants. See Public Defender Services Commission, Administrative Manual: Policies and Procedures (June 2008) c. 7, § II (c). That policy provides in relevant part: "(2) Any costs of defense for a pro se defendant for whom standby counsel has been appointed shall not be paid from the budget of the [commission].

"(3) The resources and personnel of the Division of Public Defender Services should not be used to perform services at the request of a pro se defendant. Such services, which are generally considered part of full representation, include investigation, legal research and writing, social work services, obtaining expert witnesses, clerical services, or issuance and service of subpoenas." (Emphasis omitted.) Id.

[26] First, the commission asserts that its various policies and procedures for prior approval of defense expenses would be difficult for a self-represented defendant to follow, particularly if the defendant is incarcerated. According to the commission, the procedural constraints would be especially prohibitive in instances when an incarcerated self-represented defendant seeks prior approval directly from the commission for noncustomary or unusual expenses.

Additionally, the commission contends that if a self-represented litigant

were to submit a funding request to the commission, the information contained in the request would be subject to public disclosure because the statute prohibiting the disclosure of confidential communications between a public defender and a represented person, General Statutes § 52-146u, allegedly does not apply to self-represented litigants.

[27] More specifically, the commission contends that if it is to decide whether a self-represented defendant is entitled to a specific expert or investigator, or if the commission is to approve the level of funding for such services, the commission has assumed the role of providing legal representation. We are not persuaded that this is a legitimate concern. See footnote 37 of this opinion.

[28] Specifically, the chief court administrator argues that the rules of practice providing for standby counsel; Practice Book §§ 44-4 and 44-5; and for reasonable defense expenditures of those serving pursuant to the public defender statutes; General Statutes § 51-292; establish a framework for the provision of ancillary tools of defense to indigent self-represented defendants.

As we understand its argument, the chief court administrator posits that public defenders appointed as standby counsel for indigent self-represented defendants who qualify for public defender representation; see Practice Book § 44-4; should be permitted to seek ancillary defense costs from the commission because, in those circumstances, standby counsel falls within the scope of "those serving pursuant to the provisions of this chapter" whose expenses are covered under § 51-292. See General Statutes § 51-292 ("[r]*easonable expenses* of, or *incurred by*, the commission, the Chief Public Defender, *or those serving pursuant to the provisions of this chapter*, including the rental of facilities, witnesses summoned, costs of transcripts ordered from court reporters, costs of service of process, and costs of equipment, *and other necessary disbursements or costs of defense* shall be paid from the budget of the commission upon approval of the commission" [emphasis added]).

[29] The commission argues in response that existing statutes authorize the Judicial Branch to pay for expert and investigative services for the defense. We disagree. The authority that the commission cites is inapposite. See General Statutes § 54-144 (payment of court approved expenses necessarily incurred in criminal proceedings or prosecutions); General Statutes § 54-150 (physician compensation in criminal cases); General Statutes § 54-151 (transcript and printing costs for indigent defendants); General Statutes § 54-153 (payment of costs to summon witnesses on behalf of accused).

Insofar as the state alluded to Practice Book § 42-39 in its brief, we do not believe that this rule of practice authorizes the Judicial Branch to fund reasonably necessary defense experts. Section 42-39 provides for the judicial appointment of expert witnesses and provides in relevant part that, "[w]henever the judicial authority deems it necessary, on its own motion it may appoint any expert witnesses of its own selection. . . ." In our view, this rule of practice was intended to give the trial court a means to educate itself when the intricacies of a case require it, and not to provide for the appointment of experts for an indigent party.

[30] We note that, although *Hudson* was decided prior to the legislature's enactment of chapter 887 of the General Statutes in 1972, § 51-289 (h) explicitly incorporates "those duties carried out by Superior Court and Court of Common Pleas public defenders prior to July 1, 1978 . . . ."

[31] This conclusion is further buttressed by the statutory provision governing the appointment of Division of Public Defender Services assigned counsel. General Statutes § 51-293 (a) (1) vests authority in the commission, inter alia, to appoint "as many assistant public defenders and deputy assistant public defenders for the Superior Court as the criminal or delinquency business of the court may require." This provision, however, expressly reserves authority to the trial court to assign counsel, as needed, whose expenses and compensation must be paid from the commission's budget. Section 51-293 (a) (2) provides in relevant part as follows: "This section shall not prevent a judge of the Superior Court from appointing a Division of Public Defender Services assigned counsel on a contractual basis for a temporary period of time in an appropriate case, *whose expenses and compensation shall be paid from the budget of the* [*commission*] and in accordance with the rates of compensation approved by the commission pursuant to subdivision (12) of section 51-291. Whenever possible, any such appointment shall be made from a list of attorneys provided by the commission and submitted to the court by the office of Chief Public Defender. . . ." (Emphasis added.)

[32] This court previously has approved the practice of appointing standby counsel to vindicate an indigent self-represented defendant's constitutional rights. For instance, in *State* v. *Fernandez*, 254 Conn. 637, 654–55, 758 A.2d 842 (2000), cert. denied, 532 U.S. 913, 121 S. Ct. 1247, 149 L. Ed. 2d 153 (2001), the court held that a criminal defendant's federal constitutional right of access to the courts was safeguarded by providing him with an "adequate link" to legal information through the appointment of standby counsel. See *Bounds* v. *Smith*, 430 U.S. 817, 828, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977) ("the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law"); see also *State* v. *Shashaty*, 251 Conn. 768, 781, 742 A.2d 786 (1999) ("the trial court's decision to require the defendant to rely on standby counsel for access to legal materials during part of the trial did not deprive the defendant of his fair chance to present his case in his own way" [internal quotation marks omitted]), cert. denied, 529 U.S. 1094, 120 S. Ct. 1734, 146 L. Ed. 2d 653 (2000). Although the degree of public expense may vary, we can conceive of no principled legal reason to distinguish between the use of standby counsel as an "adequate link" to legal information, and the use of standby counsel as a channel through which an indigent self-represented defendant may access public funding for investigators and expert witnesses.

To the extent that the commission argues that it has adopted a policy, pursuant to § 51-289 (g), prohibiting expenditure from its budget for the defense of self-represented defendants for whom standby counsel has been appointed; see footnote 25 of this opinion; we conclude that the commission's policy cannot trump the statutory authorization for these expenses provided in § 51-289 et seq., nor can the policy trump an indigent defendant's federal due process right to access reasonably necessary tools of defense. Indeed, notwithstanding the policy's clear prohibition against the use of commission resources for self-represented defendants, the court determined in *State* v. *Fernandez*, supra, 254 Conn. 655, and in *State* v. *Shashaty*, supra, 251 Conn. 781, that standby counsel is an appropriate channel through which a self-represented defendant may access legal information. The commission's policy does not compel a different outcome in the present case.

Not only do we see no bar to the trial court's appointment of standby counsel as a means for an indigent self-represented defendant to access funding from the commission's budget upon approval of the commission, but providing access through standby counsel would alleviate the commission's concern that self-represented litigants might be unable to navigate the existing procedures to procure authorization and payment for defense costs. See footnote 26 of this opinion. The commission's concerns regarding confidentiality would also be alleviated because standby counsel's communications with the commission, or other appropriate entity to whom the commission has designated authority to approve defense costs; see id.; would be confidential pursuant to General Statutes § 52-146u. See General Statutes § 52-146u (b) ("[i]n any . . . criminal case or proceeding . . . all confidential communications shall be privileged and a public defender shall not disclose any such communications unless the person who is represented by the public defender provides informed consent"); General Statutes § 52-146u (a) (2) (" '[c]onfidential communications' means all oral and written communications transmitted in confidence between a public defender and a person the public defender has been appointed to provide legal representation to relating to legal advice sought by the person and all records prepared by the public defender in furtherance of the rendition of such legal advice"); General Statutes § 52-146u (a) (3) (" '[p]ublic defender' means the Chief Public Defender, Deputy Chief Public Defender, public defenders, assistant public defenders, deputy assistant public defenders, Division of Public Defender Services assigned counsel and the employees of the Division of Public Defender Services").

[33] Because we answer the third reserved question in the affirmative, we do not answer the fourth reserved question. We observe, however, that in answering the third reserved question in the affirmative, we implicitly conclude that the Judicial Branch is not authorized to pay expert or investigative fees that are reasonably necessary to an indigent self-represented litigant's defense. Indeed, neither party has pointed to any authority for the Judicial Branch to provide funding for ancillary defense costs. See footnote 29 of this opinion. Although the legislature included reasonably necessary "costs of defense" within the commission's budget in § 51-292, the legislature did not similarly include such expenses within the budget of the Judicial Branch. Thus, ordering the Judicial Branch to provide funding for reasonably necessary ancillary defense costs in the present case, or in any case, would effectively usurp the power of the legislature to devise a state budget. Out of respect for the will of the legislature, we therefore conclude that the

commission must provide funding for reasonably necessary ancillary defense costs of indigent self-represented defendants.

Additionally, our conclusion that the commission, and not the Judicial Branch, is authorized to fund reasonably necessary defense costs for indigent self-represented defendants is consistent with the legislature's intent to create separation between the public defender system and the Judicial Branch. See *Gipson* v. *Commissioner of Correction*, supra, 257 Conn. 648 ("the primary purpose of P.A. 74-317 was the creation of a public defender services commission to administer the public defender system in lieu of the judges of the Superior Court, who previously had been responsible for that function").

While the legislature could ultimately decide to provide for an alternative source of funding for the expenses at issue in the present case, we conclude that, under the existing legislation, the commission is presently authorized to fund the reasonably necessary ancillary defense costs of indigent self-represented defendants.

[34] We observe that in nearly every other state that requires indigent defendants represented by retained or pro bono counsel to be afforded access to publicly funded experts or investigators—whether by statute, court rule, or constitutional mandate—the trial court retains discretion to grant or to deny requests for public funds based upon the defendant's threshold showing of reasonable necessity, or a comparable standard. See, e.g., *Jacobson* v. *Anderson*, 203 Ariz. 543, 545, 57 P.3d 733 (App. 2002) (expert is reasonably necessary to present adequate defense); *In re T.W.*, 402 Ill. App. 3d 981, 991, 932 N.E.2d 125 (2010) (expert is necessary to prove critical issue in case and denial thereof would prejudice defense); *Moore* v. *State*, 390 Md. 343, 368, 889 A.2d 325 (2005) (reasonable probability that expert will assist defense and that denial thereof would result in fundamentally unfair trial), cert. denied, 549 U.S. 813, 127 S. Ct. 59, 166 L. Ed. 2d 22 (2006); *State* v. *Mentus*, 162 N.H. 792, 795–98, 35 A.3d 572 (2011) (expert is necessary to defense); *Commonwealth* v. *Wholaver*, 605 Pa. 325, 343–46, 989 A.2d 883 (same), cert. denied,    U.S.   , 131 S. Ct. 332, 178 L. Ed. 2d 216 (2010); *State* v. *Danielson*, 814 N.W.2d 401, 409 (S.D. 2012) (expert is essential to adequate defense); *Ex parte Jimenez*, 364 S.W.3d 866, 876–80 (Tex. Crim. App. 2012) (expert is necessary to particular issue in case); *Dowdy* v. *Commonwealth*, 278 Va. 577, 592–94, 686 S.E.2d 710 (2009) (subject necessitating expert or investigative services is likely to be significant factor in defense and denial thereof would prejudice defense); but see *In re Cannady*, 126 N.J. 486, 493–95, 600 A.2d 459 (1991) (indigent defendant not represented by public defender must apply for ancillary defense services directly to public defender's office pursuant to statute authorizing that office to determine what constitutes " 'necessary services and facilities of representation' ").

Similarly, federal courts retain discretion to oversee the provision of expert or investigative assistance to indigent criminal defendants under the Criminal Justice Act, 18 U.S.C. § 3006A. Section 3006A (e) (1) of title 18 of the United States Code provides: "Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court, or the United States magistrate judge if the services are required in connection with a matter over which he has jurisdiction, shall authorize counsel to obtain the services." Under § 3006A (e) (2) (A), however, appointed counsel may obtain, subject to later review, defense services without prior authorization, if necessary for adequate representation, so long as costs do not exceed $800, with limited exceptions. See also 18 U.S.C. § 3006A (e) (2) (B) (court or magistrate judge, in interest of justice, may, if services cannot await prior authorization, approve payment for services after they have been obtained, even if cost exceeds $800).

It appears that this nearly uniform practice stems, at least in part, from a trial court's competence to ensure adequate access to competent professionals and to serve as a gatekeeper of public funds. See, e.g., *Ex parte Moody*, 684 So. 2d 114, 121 (Ala. 1996) (noting that "the trial court . . . can adequately protect taxpayers from unwise expenditures of money while at the same time protecting the constitutional rights of indigent defendants"); *Scott* v. *State*, 593 N.E.2d 198, 201 (Ind. 1992) (noting that "trial courts . . . are in the position of both ensuring that defendants receive fair trials and preventing limited resources from being used unnecessarily").

In most of these jurisdictions, however, it does not appear that the court was faced with the same question before us today regarding whether the trial court or the commission should determine whether an indigent defendant is entitled to public funds for ancillary defense costs. In a case that did examine this precise issue, *In re Cannady*, supra, 126 N.J. 494–95, the New Jersey

Supreme Court held that the office of the public defender, rather than the trial court, must authorize public funds for indigent defendants who are represented by private counsel pursuant to statutory language vesting discretion in that office to determine what are the " 'necessary services and facilities of representation . . . .' " The court in *In re Cannady* determined that "the [l]egislature intended a unitary, centralized system through which all necessary expenses of representation of an indigent defendant would be paid by the [Office of the Public Defender] regardless of whether that defendant is represented by the [Office of the Public Defender]." Id., 497–98. The court opined that "[i]n order to maintain a unitary, centralized [p]ublic [d]efender [s]ystem . . . the [Office of the Public Defender] must maintain as much control over services provided to defendants represented by outside counsel as it does over services it provides to its own clients. The [Public Defender Act] itself supports that conclusion . . . [because it] gives the [office of the public defender] discretionary authority to determine what services and facilities shall be provided to an indigent defendant . . . . Thus, the [Office of the Public Defender] should have the right to determine what expenditures are necessary and how much money should be spent when outside counsel applies for services at the [Office of the Public Defender's] expense." Id., 493.

We acknowledge that the statutes at issue in the present case are not identical to the statutes that were at issue in *In re Cannady*. Nevertheless, it is clear that the statutes governing public defender services vest authority in the commission to determine whether defense costs are reasonably necessary prior to expenditure from the commission's budget. Moreover, we see no reason why the approval mechanism should change simply because the indigent defendant is represented by himself and not by counsel. Indeed, each indigent defendant's request for ancillary defense costs should be subject to the same review process irrespective of his representation status. See *State* v. *Brown*, supra, 139 N.M. 474 ("Once indigence is conclusively established, each defendant should utilize the same procedures to apply for funding for expert services from the [public defender department]. Each application should be subject to identical review with funds distributed in some objective way, regardless of whether the defendant is represented by pro bono counsel, contract counsel, or the [public defender] [d]epartment, and should be subject to the standard fee schedule promulgated by the [public defender] [d]epartment. Treating similarly situated indigent defendants the same under the law will promote the fair administration of justice and ensure that constitutional and statutory obligations are satisfied." [Internal quotation marks omitted.]).

[35] We note that the commission has delegated authority to the supervising attorney in a public defender's office, and to the chief or deputy chief public defender, to authorize defense expenses in certain cases depending on the estimated cost and type of service requested. See Public Defender Services Commission, Administrative Manual: Policies and Procedures (June 2008) c. 4, § A. For example, the commission has delegated authority to the supervising attorney in a public defender's office to authorize up to $500 for "customary and usual expenditures"; id., § A (1); and it has delegated authority to the chief and deputy chief public defenders to authorize expenditures up to $5000 for an individual expert. Id., § A (3). The commission must authorize any request to incur costs in excess of this amount. Id., § A, pp. 4-2 through 4-3.

[36] There are numerous other provisions in the statutes governing public defender services that clearly grant the commission the autonomy to approve various expenditures from the commission's budget, as well as to approve annual budget requests that are submitted to the governor. See General Statutes § 51-291 (3) ("[the Chief Public Defender shall] [w]*ith the approval of the commission* . . . select such *professional, technical and other personnel, including investigators*, as the Chief Public Defender deems *reasonably necessary for the efficient operation and discharge of the duties of public defender services* under this chapter, subject to the personnel policies and compensation plan established by the commission" [emphasis added]); General Statutes § 51-291 (10) ("[the Chief Public Defender shall] [w]*ith the approval of the commission, apply for and accept* on behalf of the Division of Public Defender Services *any funds that may be offered* or that may become available from government grants, private gifts, donations or bequests, or from any other source, and *with the approval of the commission expend the funds to carry out the purposes of this chapter*" [emphasis added]); General Statutes § 51-291 (12) ("[the Chief Public Defender shall] [e]stablish compensation for lawyers selected under subdivision [11] of this section for their services *with the approval of the commission, to be paid from the budget of the* [*commission*]" [emphasis added]); General Statutes § 51-291 (13) ("[the Chief Public Defender shall] [p]*repare and submit to*

*the commission estimates of appropriations necessary for the maintenance and operation of public defender services*, and make recommendations with respect thereto; *and with the approval of the commission*, and after such modification as the commission directs, *submit the budget requests to the Governor*" [emphasis added]); General Statutes § 51-293 (b) ("[*t*]*he commission shall appoint*, on recommendation of the Chief Public Defender, *and fix the compensation of, all other personnel necessary* to the operation of the Division of Public Defender Services" [emphasis added]).

The commission's pervasive authority to direct necessary expenditures from its budget, as well as to influence allocations that are made to its budget, persuades us that the commission, rather than the Judicial Branch, should make the threshold determination of whether ancillary defense costs are reasonably necessary to an indigent self-represented litigant's defense.

[37] We note that the trial court already has appointed standby counsel to the defendant in the present case. At the defendant's request, therefore, standby counsel may seek approval from the commission to incur reasonably necessary ancillary defense costs.

To the extent that the commission argues that standby counsel will be subjected to habeas corpus claims of ineffective assistance of counsel; see footnote 27 of this opinion and accompanying text; we are not persuaded. "Absent a constitutional right to standby counsel, a defendant generally cannot prove standby counsel was ineffective." *United States* v. *Schmidt*, 105 F.3d 82, 90 (2d Cir. 1997); see id. ("[p]erhaps in a case where standby counsel held that title in name only and, in fact, acted as the defendant's lawyer throughout the proceedings, we would consider a claim of ineffective assistance of standby counsel"); see also *State* v. *Oliphant*, 47 Conn. App. 271, 281, 702 A.2d 1206 (1997) ("Once a defendant has properly embarked on the path of self-representation, his constitutional right to counsel ceases. . . . [A] defendant's claim that he was denied the effective assistance of counsel is without merit because after deciding to proceed pro se, he [has] no constitutional right to the effective assistance of counsel in any capacity." [Citation omitted.]), cert. denied, 244 Conn. 904, 714 A.2d 3 (1998).

In *McKaskle* v. *Wiggins*, supra, 465 U.S. 183, the Supreme Court examined the role of standby counsel. There, the court reiterated that the limited participation of standby counsel to handle routine procedural matters—even over the objection of the defendant—does not impinge upon the defendant's fundamental right to present his own defense. "*Faretta* rights are . . . not infringed when standby counsel assists the pro se defendant in overcoming routine procedural . . . obstacles to the completion of some specific task . . . that the defendant has clearly shown he wishes to complete. Nor are they infringed when counsel merely helps to ensure the defendant's compliance with basic rules of courtroom protocol and procedure. In neither case is there any significant interference with the defendant's actual control over the presentation of his defense." Id.

Assessed in light of the limited role of standby counsel envisioned in the present case, that is, to facilitate the self-represented defendant's compliance with the commission's existing administrative mechanisms for obtaining funding for ancillary defense costs, we do not perceive any appreciable risk that standby counsel will "[hold] that title in name only and, in fact, [act] as the defendant's lawyer . . . ." *United States* v. *Schmidt*, supra, 105 F.3d 90. Rather, such assistance by standby counsel readily falls into the category of "assist[ing] the pro se defendant in overcoming routine procedural . . . obstacles to the completion of some specific task . . . that the defendant has clearly shown that he wishes to complete." *McKaskle* v. *Wiggins*, supra, 465 U.S. 183. In other words, standby counsel's advisory role in helping the defendant to navigate the commission's procedures does not supplant the defendant's fundamental right to represent himself, and, therefore, does not amount to legal representation. See *State* v. *Gethers*, 197 Conn. 369, 385, 497 A.2d 408 (1985) ("there is no federal constitutional right to hybrid representation"). We therefore reject the commission's argument that standby counsel will be subjected to habeas corpus claims of ineffective assistance of counsel.

———————————————————